# THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| Edward Gonzales, et al., *individually and on behalf of all others similarly situated*, <br><br> *Plaintiffs*, <br><br> vs. <br><br> The Ohio State University, <br><br> *Defendant*. | CIVIL CASE NO.: 23-3051-MHW-EPD[1] <br><br> Previously filed as: <br>    2:18-cv-00692-MHW-EPD <br>    2:21-cv-02542-MHW-EPD <br><br> **JURY TRIAL DEMANDED** |

## Fed. Rule Evid. 104
## MOTION FOR DETERMINATION OF ADMISSIBILITY OF PERKINS COIE REPORT

Pursuant to Federal Rule of Evidence 104, the Court should determine now that the *Report of the Independent Investigation: Sexual Abuse Committed by Dr. Richard Strauss at The Ohio State University* ("Perkins Coie Report" of "Report"), referenced throughout Plaintiffs' complaint,[2] is relevant, probative, and admissible against OSU in this litigation, at trial or otherwise, under Fed. R. Evid. 801(d)(2) as an opposing party's statement. An early resolution of this evidentiary question will comport with Federal Rule of Civil Procedure 1 by enabling the Court to enter a realistic

---

[1] Per the Court's August 28, 2023 Order [Doc. 214] in 2:18-cv-00692-MHW-EPD, this case consolidates two amended class action complaints previously filed as Case No. 2:18-cv-00692-MHW-EPD (*Garrett, et al. v. OSU*, filed July 16, 2018) and Case No. 2:21-cv-2542-MEW-EPD (*Alf et al. v. OSU*, filed May 14, 2021), which were dismissed but reversed and remanded by *Garrett v. Ohio State Univ.*, 60 F.4th 359 (6th Cir.), *cert. denied sub nom. The Ohio State Univ. v. Gonzales*, 143 S. Ct. 2659 (2023). *See also Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686 (6th Cir. 2022), *cert. denied sub nom. The Ohio State Univ. v. Steve Snyder-Hill*, 143 S. Ct. 2659 (2023).

[2] Available in redacted form at https://presspage-production-content.s3.amazonaws.com/uploads/2170/finalredactedstraussinvestigationreport-471531.pdf?10000 (last visited Nov. 16, 2023).

1

schedule and case management order. In support of this motion, Plaintiffs state as follows:

1.  This class action was first filed in July, 2018, following an announcement that OSU was undertaking an investigation of itself to determine who, what, and when OSU knew about Dr. Richard Strauss and his serial sexual abuse and harassment of students and student athletes.

2.  This is one of five coordinated cases brought by survivors raising Title IX claims against Ohio State University based on pre-assault and heightened-risk theories.

3.  At the heart of the Title IX claims here is (1) whether appropriate persons at OSU had knowledge of Dr. Strauss's sexual harassment or abuse; (2) whether OSU was deliberately indifferent to the substantial risk that Dr. Strauss would sexually harass or abuse other students or student athletes at OSU; and (3) whether OSU created and was deliberately indifferent to a sexually hostile culture in its education program and activities. The Perkins Coie Report is relevant and probative of these elements of Plaintiffs' Title IX claim.

4.  Per the Report's executive summary, at page 1:

    > On April 27, 2018, in coordination with the Ohio State University's Office of Legal Affairs, Perkins Coie LLP…was retained by Porter Wright Morris & Arthur LLP (Porter Wright) which serves as appointed Special Counsel to the University, to conduct an independent factual investigation … of sexual misconduct allegations raised against former Ohio State University…physician, Dr. Richard Strauss….Strauss was employed at OSU from September 1978 until March 1998, and he died in 2005.
    > Perkins Coie was asked to investigate and to draw factual conclusions on two fronts: first, to evaluate allegations that Strauss committed acts of sexual misconduct against members of the OSU community while he was employed by the University…, and, second, to determine whether 'the University' had knowledge of such allegations against Strauss during the relevant time period. Our overall findings… are detailed in this report.…

5.  The investigation took over 13 months, and OSU paid $7.6 million for it.[3] Perkins

---

[3] *See* Tom Hanks, *Ohio State's total spending on Strauss case still a fraction of other universities' settlements*, The Lantern available at https://www.thelantern.com/projects/project/ohio-states-

Coie identified approximately 500 individual witnesses (Report, at 16), interviewed 520 individuals (*id*. at 17), collected (and uploaded to an electronic database) over 30 gigabytes of data, including more than 825 boxes of hardcopy records (comprising nearly 3,400 separate folders) provided by the University (*id.* at 18), 55 boxes of hardcopy documents provided by the OSU Police Department, (*id*. at 21), and materials provided by other academic institutions, the military, and Strauss's family, (*id*. at 21-25).

6. In 19-mc-00038, the case involving Perkins Coie's Motion to Quash a subpoena issued by the *Snyder-Hill* group of plaintiffs, OSU claims this *underlying* material is attorney-client privileged and/or is protected work product prepared in anticipation of litigation.

7. The Perkins Coie Report is relevant, probative, and admissible.

8. The parties have estimated that, if the Perkins Coie Report is admissible, discovery in these coordinated cases will take 6 months instead of 18 months. There is no reason for protracted discovery to recreate the $7.6 million investigation that was paid for by OSU and performed by what OSU claims were its lawyers.

9. Thus, the admissibility of the Report is a preliminary question, the answer to which will significantly impact the case management and scheduling order in this group of cases.

10. Plaintiffs' counsel contacted counsel for OSU regarding its position on the admissibility of the Perkins Coie Report, but OSU was not able to provide a response by the time of filing this motion.

**Legal Standard**

11. Federal Rule of Evidence 104(a) authorizes this Court to resolve preliminary

---

total-spending-on-strauss-case-still-a-fraction-of-other-universities-settlements/) (last visited Nov. 16, 2023).

questions related to the admissibility of evidence. *Id.* ("The court must decide any preliminary question about whether…a privilege exists or evidence is admissible").

12. Like Federal Rule of Civil Procedure 1, which promotes the application of rules in order "to secure the just, speedy, and inexpensive determination of every action and proceeding," Federal Rule of Evidence 102 advises that the rules "should be construed so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination."

**Argument**

13. As a recipient of federal funds, there is no dispute that OSU is subject to Title IX which prohibits sex discrimination, including sexual abuse and harassment. Title IX implies a private right of action, *see, e.g., Cannon v. Univ. of Chicago*, 441 U.S. 677, 717 (1979); *Franklin v. Guinnett Cty. Pub. Schs.*, 503 U.S. 60, 73 (1992)

14. In support of their pre-assault and heightened risk Title IX claim, Plaintiffs allege: (1) they were subjected to sexual harassment and/or abuse due to the deliberate indifference of OSU because appropriate persons at OSU with authority to take corrective action had prior notice of the sexual harassment or abuse; (2) by its acts and omissions, OSU was deliberately indifferent to the substantial risk that Dr. Strauss would sexually harass other male students at OSU[4]; (3) OSU created and was deliberately indifferent to a sexually hostile culture within its education programs and activities; and (4) the harassment or abuse effectively deprived Plaintiffs of access to educational opportunities or benefits.[5] *See Williams ex rel. Hart v. Paint Valley Loc. Sch. Dist.*, 400 F.3d 360, 366 (6th Cir. 2005); *see also Davis v. Monroe Cty Bd. of Ed.,* 526 U.S. 629, 648

---

[4] *See, e.g.*, *Gonzales* Complaint, Doc. 1.

[5] *See id.*

4

(1999) (deliberate indifference is actionable when a plaintiff can demonstrate that the school's "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.").

15. As to these elements:

   a. OSU does not and cannot dispute that it receives federal financial assistance and is therefore subject to Title IX.

   b. OSU may dispute, but Plaintiffs' evidence will establish, that the plaintiffs were subjected to sexual harassment or abuse that effectively deprived them of access to educational opportunities or benefits provided by the university.

   c. And OSU may dispute whether appropriate persons had knowledge, whether those people acted with deliberate indifference to the substantial risk that Dr. Strauss would sexually harass other male students at OSU, and whether OSU created and was deliberately indifferent to a sexually hostile culture in its education programs and activities.

16. Evidence is relevant if (1) it has *any tendency* to make a fact more or less probable than it would be without the evidence; and (2) the fact is of consequence in determining the action. F.R.E. 401.

17. The Perkins Coie Report represents a comprehensive compilation of facts relevant to both b. and c. above. These facts were collected, synthesized, and compiled into a published Report by Perkins Coie LLP, acting as OSU's agent.

18. The general rule is that all relevant evidence is admissible. F.R.E. 402.

19. The probative value of the report is not outweighed by any risk of prejudice, confusion, or waste. *See* F.R.E. 403. To the contrary, the report represents a comprehensive

5

compilation of voluminous facts uncovered from many hundreds of thousands of documents from multiple sources and the interviews of several hundred witnesses, objectively recounted and distilled. Its admission would prevent cumulative evidence, delay, and waste of time.

20. Plaintiffs therefore respectfully request that the court conclude that the Perkins Coie Report is admissible against OSU to prove the truth of the matters asserted therein because it constitutes an opposing party's statement, which is not hearsay. F.R.E. 801(d)(2).

21. F.R.E. 801(d)(2) provides:

(2) **An Opposing Party's Statement**. The statement is offered against an opposing party and:
(A) was made by the party in an individual or representative capacity;
(B) is one the party manifested that it adopted or believed to be true;
(C) was made by a person whom the party authorized to make a statement on the subject;
(D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
(E) was made by the party's coconspirator during and in furtherance of the conspiracy.
The statement must be considered but does not by itself establish the declarant's authority under (C); the existence or scope of the relationship under (D); or the existence of the conspiracy or participation in it under (E).

22. Any one of the conditions at (A) through (E) suffice.

23. The Perkins Coie Report constitutes an opposing party's statement under subsection (B) because OSU i) initiated and publicly announced the investigation[6], ii) repeatedly and actively encouraged former students and faculty to participate in it to ensure its accuracy and

---

[6] As stated on OSU's website: "In March 2018, Ohio State received a report from a former student-athlete about sexual abuse by Strauss decades earlier. Ohio State took the allegations seriously and acted immediately. Less than one week later, on April 5, 2018, the university announced an investigation and notified the Columbus Division of Police. Perkins Coie LLP was retained to conduct an external, independent investigation." https://straussinvestigation.osu.edu/ (last visited November 16, 2023).

completeness[7], iii) paid $7.6 million for it thereby adopting it, and iv) publicly presented its appalling findings as an accurate reflection of the facts. See para. 23. Never once has OSU disavowed its contents or otherwise suggested that the Perkins Coie Report was untrue or inaccurate. *See United States v. Jindau*, 98 F.3d 239, 244 (6th Cir. 1996) ("When a statement is offered as an adoptive admission, the primary inquiry is whether the statement was such that, under the circumstances, an innocent defendant would normally be induced to respond, and whether there are sufficient foundational facts from which the jury could infer that the defendant heard, understood, and acquiesced in the statement.").

24. Instead, it has repeatedly manifested its acceptance of the Report's findings. For example, OSU's then President, Michael V. Drake, said when OSU released the Perkins Coie Report, "[Perkins Coie] concluded that Strauss committed acts of sexual abuse against at least 177 students during the years he was employed as a physician at the university. The report also concludes that university personnel at the time had knowledge of complaints and concerns about Strauss' conduct as early as 1979 but failed to investigate or act meaningfully."[8] A few months later, President Drake again affirmed and adopted the Perkins Coie Report's conclusions: "Alumni and former student-athletes played a vital role in the completion of [Perkins Coie's] investigation, which found that Strauss committed acts of sexual abuse against at least 177 students during the

---

[7] "We are asking alumni who attended Ohio State during these years to please bring forward any information you may have related to the allegations by contacting the investigators engaged to examine these allegations on behalf of the university at osu@perkinscoie.com. We sincerely appreciate your willingness to assist us in this important effort." A Message from President Drake to University Alumni. May 21, 2018. https://president.osu.edu/strauss-update-alumni-may-2018 (last visited Nov. 16, 2023)

[8] A Message from President Drake: Strauss Investigation Update, May 17, 2019. https://president.osu.edu/strauss-update-alumni-may-2019.

7

time he was employed as a physician at the university. The report also concluded that university personnel at the time had knowledge of complaints and concerns about Strauss' conduct as early as 1979 but failed to investigate or act meaningfully."[9]

25. Further, in reliance on the Perkins Coie Report, OSU listed Dr. Strauss's crimes in its annual security report, as required by the Clery Act, 20 U.S.C. § 1092. See Annual Security Report & Annual Fire Safety Report, The Ohio State University, 2019, at p. 61 (attached as Exhibit 1).[10] OSU's reliance on the Perkins Coie Report in compiling and reporting data required by a federal statute (20 U.S.C. § 1092(f)(1)(F)(i)), reveals the extent to which OSU manifested its belief in its truth and accuracy. OSU would not have included those crimes reported by Perkins Coie if OSU did not believethose crimes happened or suspected the Report to be inaccurate or unreliable. *See* 34 C.F.R. § 668.46(c).

26. These statements unequivocally show that OSU has adopted the Perkins Coie Report's assertions about the widespread sexual abuse committed by Dr. Strauss and OSU's knowledge about his conduct. *See Jindau*, 98 F.3d at 244 (upholding a district court's decision to admit an out-of-court statement when there was evidence that the defendant had explicitly agreed with the out-of-court statement).

27. The Perkins Coie Report also constitutes an opposing party's statement under subsection (D) because (i) assuming Perkins Coie's own position as to the pending motion to quash a subpoena against it, see *In re Subpoena to Perkins Coie LLP*, 19-mc-38 (S.D. Ohio 2019), ECF No. 2, at 11-12, Perkins Coie was OSU's employee/agent, (ii) OSU hired Perkins Coie to conduct

---

[9] A Message from President Drake: Strauss Investigation Update, Oct. 1, 2019. https://president.osu.edu/story/strauss-update-october-2019.

[10] *See University issues annual crime report*, Ohio State University (Oct. 1, 2019), available at https://news.osu.edu/university-issues-annual-crime-report/).

an investigation and issue a report, and (iii) its statements during the course of that investigation and its resulting Report are admissible against OSU.[11]

28. The Sixth Circuit has upheld the admission of statements by an attorney representing a party under F.R.E. 801(d)(2)(D), *see Williams v. Union Carbide Corp.*, 790 F.2d 552, 555 (6th Cir. 1986) ("It is the general rule that 'statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney.'") (internal citation omitted); *United States v. Collins*, 97 F. App'x 629, 632 (6th Cir. 2004) (affirming admission of attorney's statement under FRE 801(d)(2)); and has construed the provision broadly to uphold admission. *see Carter v. Univ. of Toledo*, 349 F.3d 269, 275-75 (6th Cir. 2003).

29. The Perkins Coie Report constitutes an opposing party's statement under each of (A) and (C) as well. Subsection (A) is satisfied because OSU, through its claimed attorneys, made the statements in the Perkins Coie Report. And subsection (C) above is met because OSU authorized – indeed retained and paid – Perkins Coie to make the public statement.[12]

30. Additionally or alternatively, the Court should find that (a) the Perkins Coie Report is supported by sufficient guarantees of trustworthiness, considering the totality of the circumstances under which it was created and the existence of evidence corroborating it, and (b) it is more probative on the points for which it is offered than any other evidence that Plaintiffs can obtain through reasonable efforts, so that it may be admitted under the residual exception set forth

---

[11] This motion is based on Perkins Coie's and OSU's own positions and is made without waiver of the Interested Parties' position in 19-mc-38 (S.D. Ohio) that the evidence demonstrates Perkins Coie did not have an attorney-client relationship with OSU or its agents or employees.

[12] As noted above, OSU has recently stated that the investigation cost $7.6 million. *See* Tom Hanks, *Ohio State's total spending*.

in F.R.E. 807(a).[13]

31. Regardless, the report – and/or portions thereof, and/or materials underlying – cannot be excluded as hearsay regardless of the availability of the author/declarants because they constitute recorded recollections, F.R.E. 803(5); statements in ancient documents, F.R.E. 803(16); and, where the declarant/author is unavailable, statements against interest. F.R.E. 804(b)(3). Should the parties call any witness named in the report to testify, the report certainly is admissible to refresh the witnesses' testimony, or to evidence a prior inconsistent statement. F.R.E. 612, 613.

For the reasons above, Plaintiffs respectfully request that the Court make an early determination that the Perkins Coie Report is admissible in this matter.

Respectfully submitted this 16th day of November, 2023.

Attorneys for Plaintiffs:

/s/ *Simina Vourlis*
Simina Vourlis (0046689) (Trial Attorney)
The Law Offices of Simina Vourlis
856 Pullman Way
Columbus, OH 43212-3860
Phone: (614) 487-5900
Fax: (614) 487-5901
Email: svourlis@vourlislaw.com

Rex A. Sharp
Larkin Walsh
Sarah T. Bradshaw
SHARP LAW, LLP
5301 W. 75th Street
Prairie Village, KS 66208
(913) 901-0505
(913) 901-0419 fax
rsharp@midwest-law.com
lwalsh@midwest-law.com
sbradshaw@midwest-law.com

---

[13] This motion is intended to and hereby does provide the notice required by FRE 807(b).

>Robert Allard
>CORSIGLIA, MCMAHON AND ALLARD, LLP
>96 North Third Street, Suite 620
>San Jose, CA 95112
>(408) 289-1417
>(408) 289-8127 fax
>rallard@cmalaw.net
>
>Stephen Estey
>ESTEY & BOMBERGER LLP
>2869 India Street
>San Diego, CA 92103
>619-295-0035
>619-295-0172 fax
>steve@estey-bomberger.com
>
>Daniel R. Karon (0069304)
>KARON LLC
>700 W. St. Clair Ave., Suite 200
>Cleveland, OH 44113
>Tel.: 216.622.1851
>dkaron@karonllc.com
>
>Joseph Sauder
>SAUDER SCHELKOPF LLC
>555 Lancaster Avenue
>Berwyn, PA 19312
>(610) 200-0580
>(610) 421-1326
>jgs@sstriallawyers.com
>
>***COUNSEL FOR GONZALES PLAINTIFFS AND THE PUTATIVE CLASS***

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed electronically on November 16, 2023. Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel. The parties may access this filing through the Court's ECF system.

/s/ Simina Vourlis
Trial Attorney for
Gonzales Plaintiffs and Putative Class