## THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| JOHN DOE 162, et al., | Case No. 2:23-cv-00291 |
| Plaintiffs, | Judge Michael H. Watson |
| v. | Magistrate Judge Elizabeth P. Deavers |
| THE OHIO STATE UNIVERSITY, | |
| Defendant. | |
| WILLIAM KNIGHT, et al., | Case No. 2:23-cv-02994 |
| Plaintiffs, | Judge Michael H. Watson |
| v. | Magistrate Judge Elizabeth P. Deavers |
| THE OHIO STATE UNIVERSITY, | |
| Defendant. | |
| JOHN DOE., | Case No. 2:23-cv-2996 |
| Plaintiff, | Judge Michael H. Watson |
| v. | Magistrate Judge Elizabeth P. Deavers |
| THE OHIO STATE UNIVERSITY, | |
| Defendant. | |
| EDWARD GONZALES, et al., | Case No. 2:23-cv-3051 |
| Plaintiffs, | Judge Michael H. Watson |
| v. | Magistrate Judge Elizabeth P. Deavers |
| THE OHIO STATE UNIVERSITY, | |
| Defendant. | |

## PLAINTIFFS' BRIEF SUPPORTING CLAIM FOR FULL DAMAGES
## UNDER TITLE IX[1]

For over 30 years, the Supreme Court has held that schools are liable for the damages caused when they fail to protect their students from gender-based discrimination in the form of sexual abuse and sexual harassment. *See Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 76 (1992). The harm caused by sexual abuse does not always leave visible scars and marks. Instead, the survivor carries the harm inside of them for the rest of their lives. As such, courts have long acknowledged that survivors can recover full damages—which include emotional distress—under Title IX when their schools recklessly subject them to abuse through deliberate indifference and/or then fail to properly address it after it occurs.

In 2022, the Supreme Court precluded emotional distress damages in disability discrimination cases brought under § 504 of the Rehabilitation Act of 1973 and § 1557 of the Patient Protection and Affordable Care Act of 2010. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 230 (2022). In dictum, the Sixth Circuit stated that *Cummings* applies to Title IX. *S.C. v. Metro. Gov't of Nashville*, 86 F.4th 707, 718 (6th Cir. 2023). If *Cummings* extends to Title IX cases involving sexual abuse survivors, many survivors will be significantly limited in how they can vindicate their rights and hold their schools responsible. But Title IX case precedent is clear that Plaintiffs are entitled to recover all discrimination damages regardless of the Constitutional source of Congress' power to enact the law. Thus, the Court should allow emotional distress damages in this case.

---

[1] This brief is not joined by the *Snyder-Hill* plaintiffs.

*Background*

Years before *Cummings*, Plaintiffs brought this case against OSU under Title IX[2] after discovering that OSU knew that Dr. Richard Strauss systematically abused hundreds—if not thousands—of OSU students during his tenure as team doctor and University physician. Today, these former students have a wide variety of damages stemming from OSU's failure to stop Dr. Strauss. These damages all stem from physical injury and unwanted physical contact, and include physical harm, lost educational opportunities, lost earnings, lost earning capacity, medical costs, damages from discrimination, and (relevant for this motion), emotional distress damages.

Given that some Plaintiffs seek emotional distress damages (among other types of damages) in their Title IX claims, the Court ordered Plaintiffs to file a brief "explaining how emotional distress damages are available in these cases notwithstanding the Supreme Court's decision in *Cummings v. Premier Rehab Keller*, *PLLC*, 596 U.S. 212 (2022) and the Sixth Circuit's later decision in *S. C. v. Metro. Gov't of Nashville*, 86 F.4th 707 (6th Cir. 2023)." CMO 3, ECF No. 45 at PageID 1036.[3] Plaintiffs discuss each case, in turn, below. The Court has not asked the parties to brief the question of what other damages, beyond emotional distress, are available after *Cummings*. *See id.* So, Plaintiffs do not do so here.

**I.     *Cummings***

*Cummings* involved a blind and deaf plaintiff who was seeking physical therapy services from the defendant. 596 U.S. at 216. Despite repeated requests, the defendant refused to provide someone who could perform American Sign Language to communicate with the plaintiff. *Id.* at 217. This refusal forced the *Cummings* plaintiff to use a different physical therapist. *Id.* Ultimately,

---

[2] 20 U.S.C. § 1681.

[3] Record citations are from the *Gonzales* docket (Case No. 23-3051).

however, the *Cummings* plaintiff received the physical therapy she originally sought from the defendant. *Id.* She sued the defendant under the Rehabilitation Act of 1973 and the Patient Protection Affordable Care Act ("ACA"). *Id.* Her only damages in the case were emotional distress damages. *Id.* Plaintiff was not physically injured, and her emotional distress was not a result of unwanted physical harm. *See id.*

*Cummings* held that purely emotional distress damages were unavailable under these two statutes. *Id.* at 230. It reasoned that Congress enacted both the Rehabilitation Act and ACA using its power under the Spending Clause of the Constitution,[4] which allows Congress to condition funding on certain conditions. *Id.* at 217–18. *Cummings* analogized this conditional funding to a contract and held that only damages normally available in contract actions were available to plaintiffs seeking to enforce their rights under statutes passed under the Spending Clause. *Id.* at 219. It stated that contract damages were the appropriate damages measure because funding recipients would have only been on notice that they could face contractual damages when they accepted the funds. *Id.* As a result, the Court held that the *Cummings* plaintiff could not recover purely emotional distress damages. *Id.* at 221.

## II.     *S.C.*

S.C. brought her case after she was sexually assaulted in her school when she was a minor, a high school freshman. *S.C.*, 86 F.4th at 711. This sexual assault was video recorded, disseminated across the school, and uploaded to social media and third-party websites, including Pornhub. *Id.* The school knew that similar assaults and recordings were rampant among its student population. *Id.* at 712. But it tried nothing to prevent them. *Id.* After S.C. reported her sexual assault, the school failed to stop threats from other students and—to rub salt in the wound—suspended her. *Id.* S.C.

---

[4] U.S. Const. art. I, § 8, cl. 1.

never returned to the school once her suspension ended and moved to a different county the following school year. *Id.*

She sued the school under Title IX for both its deliberate indifference to the rampant sexual misconduct in the school and for its response once S.C. reported her assault. *Id.* At trial, S.C. proved that these tragedies caused:

- Disruption to her educational experience,

- Substantially lower grades,

- Drug and alcohol abuse,

- Social withdrawal,

- Self-harm, and

- Severe mental health disorders, including Post-Traumatic Stress Disorder.

*Id.* The district court awarded S.C. emotional distress damages for these lasting effects as Title IX precedent allowed. *Id.* at 713–14. The school district, however, never argued that emotional distress damages were unavailable for Title IX actions before the district court. *Id.* at 718. After the district court entered its judgment, the Supreme Court issued *Cummings*. *Id.*

On appeal, the school district argued that *Cummings* precluded the emotional distress damages that were awarded by the district court. *Id.* But the Sixth Circuit panel affirmed the emotional distress damages because the school district had failed to challenge these damages before the district court. *Id.* at 719. In dictum, however, the Sixth Circuit panel also said, "*Cummings* leaves little doubt that emotional distress damages are no longer permitted for violations of Title IX." *Id.* at 718.

*Argument*

Despite *Cummings* and *S.C.*, emotional distress damages are available in Title IX cases. *S.C.* stated that *Cummings* applies to Title IX in dictum. *See* 86 F.4th at 718. Thus, this statement does not bind the Court. *Firexo, Inc. v. Firexo Group Limited*, 99 F.4th 304, 325 (6th Cir. 2024). In fact, S.C. never argued that *Cummings* does not apply to Title IX. Appellee/Cross-Appellant Brief at 40–44, *S.C.*, 86 F.4th 707 (6th Cir. 2023) (No. 22-5104, 22-5125), 2022 WL 17583580, at *39–44. Her choice meant that the Sixth Circuit lacked any argument opposing application of *Cummings* to Title IX cases. *See Cent. Va. Comm. College v. Katz*, 546 U.S. 356, 363 (2006) ("[W]e are not bound to follow our dicta in a prior case in which the point now at issue was not fully debated.").

Plaintiffs provide those arguments here. *Cummings* does not bind Title IX litigants for four reasons. First, Congress enacted Title IX using its power under the Fourteenth Amendment, which makes *Cummings*'s analysis inapplicable. Second, *Cummings*'s analysis about the Rehabilitation Act and the ACA defendants' lack of notice is inapposite because schools were and are on notice that they could face emotional distress damages if they violated Title IX's mandate. Third, barring emotional distress damages undermines the power of Title IX's private right of action, especially for schools' youngest victims. And fourth, equity principles demand that these damages be available to survivors in light of schools' receipt of federal funds and subsequent deliberate indifference to sexual abuse or harassment.

I.    *Cummings* **applies to Spending Clause statutes, but Title IX arose from Congressional Fourteenth Amendment power.**

Because Congress used the Fourteenth Amendment (or other Constitutional power) to enact Title IX, *Cummings* does not foreclose emotional distress damages in this case. *Cummings* precluded emotional distress damages for claims under the Rehabilitation Act and the ACA. 596

U.S. at 230. Congress passed both statutes using its Spending Clause power. *Id.* at 219. In contrast, courts have routinely allowed plaintiffs to recover emotional distress damages in cases brought under statutes where Congress used its Fourteenth Amendment power to enact them. *See Ellison v. Balinski*, 625 F.3d 953, 959 (6th Cir. 2010) (allowing mental distress damages in § 1983 action). This is so because Fourteenth Amendment statutes can impose tort damages, which have historically included emotional distress damages. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306–07 (1986). Because Spending Clause statutes are viewed as contractual in nature, these types of damages are typically unavailable. *Cummings*, 596 U.S. at 221. And the *Franklin* Court provided for damages beyond what is traditionally allowed in contract disputes "*irrespective of the constitutional source of Congress' power to enact the statute.*" *Franklin*, 503 U.S. at 75 n.8.

Sixth Circuit precedent recognizes that Congress used its power under the Fourteenth Amendment to enact Title IX. *See Franks v. Ky. Sch. for the Deaf*, 142 F.3d 360, 363 (6th Cir. 1998). *Franks* decided that Congress could abrogate states' sovereign immunity under the Fourteenth Amendment when passing Title IX. *Id.* And the Sixth Circuit reaffirmed that holding less than one month ago. *See Doe v. Univ. of Ky.*, ___ F.4th ____, No. 22-6012, 2024 WL 3688446, at *13 (6th Cir. Aug. 7, 2024). *Doe* allowed a Title IX suit to continue even though the University of Kentucky argued that the plaintiff only had emotional distress damages. *Id.*

To be sure, the Supreme Court has written about Title IX in a way that invokes Congress's Spending Clause power. But that simply reflects the reality that Congress never expressly said what Constitutional provision it relied on when passing Title IX. *Franks*, 142 F.3d at 363. And multiple sources of authority can support Congress's power to pass legislation. *See Griffith v. Breckenridge*, 40 U.S. 88, 105–06 (1971) (relying on two sources of Constitutional authority to support the Constitutionality of 42 U.S.C. § 1985(3)). This aspect of Title IX differentiates it from

7

the statutes at issue in *Cummings*. The Sixth Circuit has not cited the Fourteenth Amendment as valid authority for the Rehabilitation Act. *Nihiser v. Ohio E.P.A.*, 269 F.3d 626, 628–29 (6th Cir. 2001). Similarly, the Supreme Court never invoked the Fourteenth Amendment to support passage of the ACA. *See generally Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012).

Title IX's Fourteenth Amendment basis is particularly notable here because OSU is a public institution. *Wolf v. Ohio State Univ. Hosp.*, 162 N.E.2d 475, 475 (Ohio 1959). Legislation passed pursuant to the Fourteenth Amendment generally cannot apply to private actors. *United States v. Morrison*, 529 U.S. 598, 621 (2000). The *Cummings* defendant was a private actor. This fact meant that the Supreme Court could not use the Fourteenth Amendment to analyze whether emotional distress damages were available under the Rehabilitation Act or the ACA. Thus, *Cummings* does not apply here because—unlike the Rehabilitation Act and the ACA—the Fourteenth Amendment allowed Congress to apply Title IX to public institutions.

II.   **Even if *Cummings*'s analysis applies to Title IX, emotional distress damages are available in such cases.**

Even if the Court concludes that the *Cummings*'s analysis applies to Title IX cases, emotional distress damages are still available in such cases. *Cummings* held that recipients of federal funds were not on notice that they could be liable for emotional distress damages under the Rehabilitation Act and the ACA if they discriminated because of someone's disability. 596 U.S. at 226. Discrimination based on sex, barred by Title IX, leads to a different result than *Cummings* for three reasons. First, schools were and are on notice that they face emotional distress damages if they fail to protect their students from sexual abuse or harassment. Second, barring emotional distress damages will eviscerate Title IX's purpose and protections. And third, equity demands that sexual abuse and harassment survivors be able to recover for emotional distress damages.

**A.    Schools know that they could be liable for emotional distress damages when they accept federal funds.**

*Cummings* does not foreclose emotional distress damages in Title IX cases because schools, unlike the fund recipient defendant in that case, have been on notice for over forty years that they could face emotional distress damages since the private right of action was established in *Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979), and subsequently in *Franklin*, which explicitly allowed for money damages for Title IX litigants. 503 U.S. 60. Over the years, cases arising from sexual assault and harassment have become increasingly prominent in Title IX litigation. Pure economic harms are hard to quantify (and sometimes nonexistent) in these cases. Indeed, the Centers for Disease Control has observed that experts can only estimate the cost of sexual violence. CDC, Sexual Violence Prevention: About Sexual Violence (Jan. 23, 2024).[5]

Like many minor Plaintiffs, the *S.C.* plaintiff showed that her mental health significantly deteriorated after her assault but could not point to tangible economic harms such as lost earning capacity or physical injury. *See* 86 F.4th at 712. Similarly, the minor plaintiff in *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), also primarily relied on mental distress to describe the harm caused by her school's failure to stop the perpetrator. *Id.* at 634. And established case law has recognized this in countless other Title IX cases against schools and universities across the country—emotional distress damages are available to plaintiffs who endure sexual abuse or harassment.

Congress recognized the harm sexual abuse and assault can cause students when it passed the Clery Act. The Clery Act requires schools that receive federal funds to report certain crimes statistics and campus security policies. 20 U.S.C. § 1092(f). Congress required funding recipients

---

[5] Available at https://www.cdc.gov/sexual-violence/about/index.html.

to do so because "there is a clear need…to encourage the development of policies and procedures to address sexual assaults…on college campuses." Student Right-to-Know and Campus Security Act, Pub. L. 101-542, § 202(7)(C), 104 Stat. 2381 (1990).

Two years later, the Supreme Court confirmed what had already been held by numerous district courts: monetary damages are available under Title IX to students whom schools fail to protect from discrimination based on sex. *Franklin*, 503 U.S. at 73. *Franklin* addressed an argument raised by the United States that Title IX damages were limited to equitable remedies like backpay and prospective relief. *Id.* at 75. The Supreme Court rejected that argument because adequate legal remedies were available to the plaintiff. *Id.* at 76. Further, backpay and prospective relief would not help the plaintiff. *Id.* Unequivocally, the Court found, "Our reading of the two amendments to Title IX enacted after *Cannon* leads us to conclude that Congress did not intend to limit the remedies available in a suit brought under Title IX." *Franklin*, 503 U.S. at 72. Thus, *Franklin* (and its progeny) and the Clery Act alerted schools that they could be liable for emotional distress damages if they failed to protect their students from sexual abuse and harassment.

In contrast, disability discrimination claims like the ones at issue in *Cummings* are more likely to invoke economic damages against entities like the defendant rehabilitation center at issue in that case, which are without the years of clear notice of liability that schools have. These disability claims often involve plaintiffs who try to access a publicly available service only to have the defendant deny them that ability. *See, e.g.*, *Sjostrand v. Ohio State Univ.*, 750 F.3d 596, 598 (6th Cir. 2014) (denying entry into school psychology Ph.D. program because of the plaintiff's Crohn's disease). This denial often forces the plaintiff to incur additional economic expenses for access they would have had but-for their disability or otherwise cause them economic harm. *See Tennessee v. Lane*, 541 U.S. 509, 514 (2004) (denying access to courthouse because it lacked

wheelchair access to upper floors). One *Lane* plaintiff was arrested and jailed because he could not reach a courtroom for a hearing. *Id.* The other lost work as a court reporter because he could not reach courtrooms. *Id.* Not to diminish the devastating effects of this type of discrimination on these disabled plaintiffs, but simply, Title IX claims rooted in sexual abuse or harassment are not analogous. And these cases of other types of discrimination, like *Cummings*, involve defendants who don't have the awareness of exposure to liability predicated on federal funding like a Title IX defendant would.

These denial of services type cases have concrete, economic consequences attached to them. Emotional distress naturally can follow from such humiliating discrimination, but the statutes are more focused on ensuring all people can participate in the nation's economy. The funding recipients thus are on notice that they could be liable for any out-of-pocket expenses incurred in securing appropriate services. Title IX harassment cases, by contrast, inevitably involve different types of injuries. *See supra* Part II.B. Thus, funding recipients should know that they could face non-economic damages such as emotional distress damages in Title IX cases.

### B. Barring emotional distress damages will significantly limit many survivors'— and especially young survivors'—ability to hold their schools accountable.

Precluding emotional distress damages would fly in the face of all principles of equity in law because federal funding recipients may be "held liable for *extraordinary harm due to special circumstances* ... [it] knew or had reason to know ... made *such extraordinary injury probable*." *Guardians Assn. v. Civil Serv. Comm'n of NYC*, 463 U.S. 582, 597, n. 20 (1983) (emphasis added). If survivors cannot recover emotional distress damages, they will lose a crucial tool to hold schools accountable. Emotional distress damages are inevitable in sexual harassment cases. Research has shown that any form of sexual harassment stresses the survivor every day. RAINN, Effects of

Sexual Violence (last accessed on September 3, 2024, at 2:07 PM CDT).[6] Examples of these damages are widespread. *See, e.g.*, *Roohbaksh v. Bd. of Trs. of Neb. State Colleges*, 409 F. Supp. 3d 719, 737–38 (D. Neb. 2019); *Dawn L. v. Greater Johnstown Sch. Dist.*, 586 F. Supp. 2d 332, 385 (W.D. Pa. 2008).

As Justice Breyer noted in his dissent in *Cummings*, "emotional injury is the primary (sometimes the only) harm caused by discrimination, with pecuniary injury at most secondary." *Cummings*, 596 U.S. at 235 (Breyer, J., dissenting). His first example was the plaintiff in *Franklin*, "a high school student who was repeatedly sexually assaulted by her teacher." *Id.* For young students like her, who are not close to entering the job market, it will be especially hard to establish non-speculative lost earnings. *See B.R. v. F.C.S.B.*, ___ F. Supp. 3d ___, No. 19-917, 2024 WL 1254826, at *8 (E.D. Va. Feb. 26, 2024) (rejecting lost earning capacity damages for plaintiff who was in seventh grade when she was assaulted).

This leaves many of the most vulnerable survivors—*i.e.*, younger plaintiffs—with no hope of being made whole or true accountability. Consider the other plaintiffs in *Gebser*, *Davis*, *Franks*, and *S.C.* or any other minor child who is sexually abused by a teacher, school employee, or another student. Their recourse will be significantly limited if *Cummings* precludes all emotional distress damages. Whatever damages they can recover will be far from proportionate to the harm they experienced. *See also Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495 (6th Cir. 1996) (14-year-old who suffered damages as a result of being sexually harassed, abused, and ultimately statutorily raped by her school teacher); *Massey v. Akron City Bd. of Educ.*, 82 F. Supp. 2d 735 (N.D. Ohio 2000) (three minor male plaintiffs who were repeatedly sexually abused or harassed by a male teacher); *Doe ex rel. Pahssen v. Merrill Cmty. Sch. Dist.*,

---

[6] Available at https://rainn.org/effects-sexual-violence.

610 F. Supp. 2d 789 (E.D. Mich. 2009) (plaintiff in eighth grade raped by a ninth-grade student after school as she was waiting for a ride home from her father). The Court should not bar emotional distress damages and leave these survivors unable to vindicate their rights.

### C. Equity jurisprudence demands the Court allow Plaintiffs to pursue a claim for emotional distress.

Applying *Cummings* to Title IX would mean that schools that ignore systemic abuse like Penn State (Jerry Sandusky), Michigan State (Larry Nassar), and Michigan (Robert Anderson) will never be held fully accountable for their civil rights violations. Similarly, schools like Baylor will have little incentive to correct the culture of their football team, which brings millions of dollars to the schools. *See Doe 1 et al v. Baylor*, No. 6:16-CV-00173 (W.D. Tex.). Primary and secondary schools may view Title IX compliance as a nuisance that they can ignore in the face of budget shortfalls.

The only way to hold these schools' feet to the fire for the invasion of plaintiffs' legal rights is to allow those they wrong (*i.e.*, survivors) the ability to recover damages proportionate to the wrong. And "it is ... well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Franklin*, 502 U.S. at 66 (quoting *Bell v. Hood*, 327 U.S. 678, 684 (1946)). For this reason, the Court may use its inherent judicial discretion to allow for equitable recovery for these Plaintiffs against OSU, which allowed them to be sexually assaulted as college students. *City of Memphis v. Horn Lake Creek Basin Interceptor Sewer Dist.*, 693 F. Supp. 3d 839, 868 (W.D. Tenn. 2023) (noting that federal courts have broad discretion to fashion equitable remedies, particularly where public health, morals, or safety are affected). This discretion is necessary to ensure complete justice and give the Court authority to remedy the wrongs before it. *Id.* And just recently, post-*Cummings*, the Supreme Court in *Starbucks* emphasized courts' role

in deciding how it may issue its rulings with equity as the hallmark. *Starbucks Corporation v. McKinney*, 144 S. Ct. 1570, 1576 (2024).

Equity in this case requires the Court to allow Plaintiffs the opportunity to pursue claims for all damages they incurred as a result of their sexual assault, which only occurred because of OSU's deliberate indifference to Dr. Strauss. As the Sixth Circuit confirmed in *Doe v. University of Kentucky*, a plaintiff is entitled to pursue these broad discrimination damages, and the Court may use its inherent discretion to decide what these damages entail so that relief is just and proper. 2024 WL 3688446, at * 13. Broadly, discrimination damages reflect awards given to plaintiffs to compensate for their losses and suffering due to discriminatory practices, such as sexual abuse, as is the case here. These damages can include both compensatory and punitive damages. *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843 (2001). Absent allowance for recovery of all the damages that flowed from Strauss's abuse, Plaintiffs will never be truly compensated or given the opportunity to be able to be made whole again even if OSU is found liable for all Plaintiffs' allegations. If this significant portion of Plaintiffs' damages are disallowed, they will never have "complete justice." *City of Memphis*, 693 F. Supp. 3d at 868 (quoting *Andrews v. Drake*, 83 F.2d 767, 773 (6th Cir. 1936)).

### Conclusion

*Cummings* should be restricted to statutes only founded on the Spending Clause, unlike Title IX which also springs from the Fourteenth Amendment. Even then, the personal nature of the contract to educate should allow emotional distress damages in cases like this one. Otherwise, *Cummings* needlessly revictimizes sexual abuse survivors by denying them a full remedy in court. The harm left by discrimination "is not simply dollars and cents, hamburgers and movies; it is…humiliation, frustration, and embarrassment…." *Heart of Atl. Motel, Inc. v. United States*, 379

14

U.S. 241, 291 (1964) (Golberg, J., concurring). In other words, "discrimination is harm." *Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346, 365 (2024) (Kavanaugh, J., concurring). So, survivors of sexual abuse and harassment who experience this harm should still be renumerated under the law.

Courts have long recognized that this harm causes emotional distress and allowed litigants to recover for it. Removing that damage for Title IX claims will significantly reduce accountability for schools that turn a blind eye to sexual abuse. The Court should hold that Title IX provides for these types of damages via the Fourteenth Amendment and because, even under the Spending Clause, recipients of federal funds have long been on notice that they can be liable for emotional distress. These damages are mandated by the spirit of Title IX and equity. The Court should allow Plaintiffs to claim emotional distress damages, notwithstanding the holdings in *Cummings* and *S.C.*

Dated: September 3, 2024             Respectfully submitted,

                                     */s Rex. A Sharp*
                                     Rex A. Sharp
                                     Sarah T. Bradshaw
                                     Nathan Kakazu
                                     SHARP LAW, LLP
                                     4820 W. 75th Street
                                     Prairie Village, KS 66208
                                     (913) 901-0505
                                     rsharp@midwest-law.com
                                     sbradshaw@midwest-law.com
                                     nkakazu@midwest-law.com

                                     Simina Vourlis (0046689) (Trial Attorney)
                                     The Law Offices of Simina Vourlis
                                     856 Pullman Way
                                     Columbus, OH 43212-3860
                                     Phone: (614) 487-5900
                                     Fax: (614) 487-5901
                                     Email: svourlis@vourlislaw.com

Robert Allard
96 North Third Street, Suite 620
San Jose, CA 95112
(408) 289-1417
(408) 289-8127 fax
rallard@cbalaw.net

Stephen Estey
ESTEY & BOMBERGER LLP
2869 India Street
San Diego, CA 92103
619-295-0035
619-295-0172 fax
steve@estey-bomberger.com

Daniel R. Karon
KARON LLC
700 W. St. Clair Ave., Suite 200
Cleveland, OH 44113
Tel.: 216.622.1851
dkaron@karonllc.com

Joseph Sauder
SAUDER SCHELKOPF LLC
555 Lancaster Avenue
Berwyn, PA 19312
(610) 200-0580
(610) 421-1326
jgs@sstriallawyers.com

Counsel for the *Sharp Group* Plaintiffs (*Gonzales, et al*.,
Case No. 2:23-cv-3051)


J.C. Ratliff (0027898) (Trial Attorney)
Rocky Ratliff (0089781)
200 West Center Street
Marion, Ohio 43302
Telephone: 740.383.6023
Facsimile: 740.383.2066
attorney.ratliff@gmail.com
attorneyrockyratliff@gmail.com

Counsel for the Ratliff Plaintiffs (*Knight, et al.* Case No.
2:23-cv-02994)

16

Richard W. Schulte (0066031) (Trial Attorney)
Jacob A. Gebelle (0093528)
WRIGHT & SCHULTE, LLC
865 S. Dixie Dr.
Vandalia, OH 45377
(937) 435-7500
(937) 435-7511 facsimile
rschulte@yourlegalhelp.com
jgebelle@yourlegalhelp.com

Dennis P Mulvihill
Wright & Schulte, LLC
31100 Pinetree Road
Suite 225
Ste 620
Pepper Pike, OH 44124
dmulvihill@yourlegalhelp.com

Michael L Wright
Wright & Schulte, LLC
130 W. Second Street, Suite 1600
Dayton, OH 45402
mwright@yourlegalhelp.com

Counsel for the *Wright & Schulte* Plaintiffs (*John Does 162, et al.*, Case No. 2:23-cv-02991)


John C. Camillus, Trial Attorney (0077435) (Trial Attorney)
Law Offices of John C. Camillus, LLC
P.O. Box 141410
Columbus, Ohio 43214
(614) 992-1000
(614) 559-6731 (facsimile)
jcamillus@camilluslaw.com

Mitchell Schuster, Esq. (admitted pro hac vice)
Benjamin D. Bianco, Esq. (admitted pro hac vice)
Michael P. Regan (admitted pro hac vice)
Meister Seelig & Fein PLLC
125 Park Avenue, 7th Floor
New York, New York 10017
(212) 655-3500
(212) 655-3535 (facsimile)
ms@msf-law.com

bdb@msf-law.com
mpr@msf-law.com

Counsel for the *Bianco* Plaintiff (*John Doe*, Case No. 2:23-cv-02996)