# THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JOHN DOE 162, et al., | Case No. 2:23-cv-00291 |
| Plaintiffs, | Judge Michael H. Watson |
| v. | Magistrate Judge Elizabeth P. Deavers |
| THE OHIO STATE UNIVERSITY, | |
| Defendant. | |
| STEVE SNYDER-HILL, et al., | Case No. 2:23-cv-02993 |
| Plaintiffs, | Judge Michael H. Watson |
| v. | Magistrate Judge Elizabeth P. Deavers |
| THE OHIO STATE UNIVERSITY, | |
| Defendant. | |
| WILLIAM KNIGHT, et al., | Case No. 2:23-cv-02994 |
| Plaintiffs, | Judge Michael H. Watson |
| v. | Magistrate Judge Elizabeth P. Deavers |
| THE OHIO STATE UNIVERSITY, | |
| Defendant. | |
| JOHN DOE., | Case No. 2:23-cv-2996 |
| Plaintiff, | Judge Michael H. Watson |
| v. | Magistrate Judge Elizabeth P. Deavers |
| THE OHIO STATE UNIVERSITY, | |
| Defendant. | |

| | |
|---|---|
| EDWARD GONZALES, et al., <br><br> Plaintiffs, <br> v. <br><br> THE OHIO STATE UNIVERSITY, <br><br> Defendant. | Case No. 2:23-cv-3051 <br><br> Judge Michael H. Watson <br><br> Magistrate Judge Elizabeth P. Deavers |

**PLAINTIFFS' JOINT REPLY REGARDING AVAILABILITY OF EMOTIONAL DISTRESS DAMAGES**

Plaintiffs stand on the arguments submitted in their opening brief (ECF #73). Emotional distress damages are available because: 1) Title IX springs not just from the Spending Clause, but from the Fourteenth Amendment's mandate for equal protection for all under our laws; 2) schools like OSU had ample notice they could be sued for Title IX emotional distress damages for over 30 years; 3) disallowing these damages will undermine Title IX's purpose; and 4) courts may fashion any equitable remedies they see fit. While defendants after *Cummings* raised the specter of these types of damages no longer being available under Title IX, Cummings did not address or disturb any other cognizable damage category. *Cummings v. Premier Rehab Keller, P.L.L.C.,* 596 U.S. 212, 221 (2022) (even under just the Spending Clause, "the *usual* contract remedies in private suits," including compensatory damages). Plaintiffs will not reiterate arguments on the points above but will simply respond to propositions raised by OSU in its Response.

Plaintiffs also write to note that OSU's response exceeds the scope of the Court's ordered briefing. Per the Court's order, the Plaintiffs were instructed to file a brief "explaining how emotional distress damages are available in these cases notwithstanding the Supreme Court's decision in *Cummings v. Premier Rehab Keller*, *PLLC*, 596 U.S. 212 (2022) and the Sixth Circuit's later decision in *S.C. v. Metro. Gov't of Nashville*, 86 F.4th 707 (6th Cir. 2023)." Case Management Order 3 at 3 (July 1, 2024). OSU uses its response to invite the Court to rule on the availability of

2

a far broader range of damages. Plaintiffs will not take the bait. That is not the topic of the instant briefing, and such a broad ruling would be premature before discovery.

Consistent with the Court's order, the Plaintiffs file a single brief, even though one group of Plaintiffs joins only one part. The *Snyder-Hill* Plaintiffs did not join the opening brief because they are not seeking emotional distress damages, and do not join most of this brief. However, because OSU's response addresses issues beyond the Court-ordered topic of briefing, and because those issues will affect the *Snyder-Hill* Plaintiffs, they join Part III of this brief, which addresses the scope of the question before this Court.

**I.  Congress relied on—at least, in part—the Fourteenth Amendment to enact Title IX, thus opening the door to all tort damages such as emotional distress damages.**

Two things can be true. Congress can derive power to enact legislation from Fourteenth Amendment and the Spending Clause.[1] The Supreme Court expressly punted on the issue of whether the Fourteenth Amendment also gives Congress the power to enact Title IX. *See Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75 n.8 (1992). Since *Cummings*, no federal appellate court has held that Title IX was solely Spending Cause legislation. Instead, the *only* Circuit Court of Appeals post-*Cummings* to examine Title IX's origination as Fourteenth Amendment legislation explicitly found "**Congress passed Title IX pursuant to its power to enforce the Fourteenth Amendment to combat gender discrimination in education**…." *Ng v. Bd. of Regents of Univ. of Minn.*, 64 F.4th 992, 998 (8th Cir. 2023) (emphasis added) (cleaned up).

OSU conclusory statement that *S.C.* addressed this Fourteenth Amendment issue fails to explain how *S.C.*'s statement about Title IX being a Spending Clause statute is anything more than

---

[1] *See Crawford v. Davis*, 109 F.3d 1281, 1283 (8th Cir. 1997); *Prinsloo v. Ark. State Univ.*, 112 F.3d 514 (8th Cir. 1997) (affirming *Crawford*).

3

dicta. *See* OSU Br., ECF No. 79 at PageID 1216. OSU never addresses how the Sixth Circuit made that statement in reaching its ultimate conclusion. Nor does it undermine the issue that the Sixth Circuit lacked arguments against applying *Cummings* to Title IX cases. As such, it fails to meaningfully explain why *S.C.*'s statement is a binding holding from the Sixth Circuit. *S.C.* simply never addressed Title IX in the context of the Fourteenth Amendment at all.

This holding in *Ng* matches what the Sixth Circuit held previously in *Franks v. Kentucky School for the Deaf*. 142 F.3d 360, 363 (6th Cir. 1998). OSU tries to minimize *Franks* by noting that this case was about whether Congress validly abrogated states' sovereign immunity when it enacted Title IX. OSU Br., ECF No. 79 at PageID 1217. *Franks* concluded that Congress had validly done so because it used its powers under the Fourteenth Amendment to abrogate states' sovereign immunity. *Franks v. Ky. Sch. for the Deaf*, 142 F.3d 360, 363 (6th Cir. 1998). This reasoning powers Plaintiffs' argument that Title IX—unlike the Rehabilitation Act and the ACA at issue in *Cummings*—has the tort remedies widely recognized to be available from other legislation that relies on the Fourteenth Amendment—including emotional distress damages. *See Ellison v. Balinski*, 625 F.3d 953, 959 (6th Cir. 2010). The fact that *Franks* made that Fourteenth Amendment pronouncement when evaluating a sovereign immunity argument doesn't undermine its applicability here, rather it confirms it.

As *Cummings'* holding emphasizes, the Spending Clause allows Congress to enact laws to dole our federal funds in exchange of imposed conditions. *Cummings,* 596 U.S. at 217–18*,* U.S. Const. art. I, § 8, cl. 1; *see also Nat'l Fed'n of Indep. Bus. v. Sebelius,* 567 U.S. 519, 576, 132 S. Ct. 2566, 2601, 183 L. Ed. 2d 450 (2012). But the Fourteenth Amendment ensures citizens are afforded equal protection under our laws and prevents states (and any public entity, like a university, an arm of the state) from depriving citizens of these rights. U.S. Const. amend. XIV;

4

*Plyler v. Doe,* 457 U.S. 202 (1982). As *Ng* found, Title IX springs from this very ideal—for the purpose of protecting students on college campuses from discrimination based on sex. *See* 20 U.S.C. § 1681(a). *Cummings* addressed a breach of contract framework under Spending Clause legislation. Title IX's focus on protecting individuals from discrimination requires a more expansive interpretation of damages to effectuate the statute's goals.

In other words, *Cummings* did not consider the scenario of a Title IX claimant, and simply considered Defendants in a case arising from the Rehabilitation Act/Affordable Care Act or other explicit Spending Clause claims. It painted broad brush strokes attempting to limit damages only based on the defendant's state of mind on notice of damages that arise from Spending Clause statutes but did so without considering Fourteenth Amendment jurisprudence and other authority that set the stage for Title IX as a specific statutory mechanism to ferret out sex-based discrimination in education. Considering the Fourteenth Amendment leads to the conclusion that Title IX plaintiffs can recover emotional distress damages.[2]

## II. Evaluating the purpose and spirit of Title IX is critical to determine the available damages.

Even if *Cummings* applies to Title IX cases, schools may still be found liable for emotional damages for the reasons Plaintiffs explained in their opening brief. Unequivocally, schools must understand the full implications of accepting federal funding under Title IX, which includes compliance with anti-discrimination mandates that, if violated, can result in compensatory damages for plaintiffs. The contract at issue, created to effectuate Title IX's goals, mandated OSU to take on certain duties to protect its students from discrimination based on sex, including sexual

---

[2] And it's worth noting that the case OSU primarily relies on for its proposition about the origin of Title IX being the Spending Clause, *Doe 1 v. Curators of Univ. of Missouri*, No. 19-CV-04229-NKL, 2022 WL 3366765 (W.D. Mo. Aug. 15, 2022), is a District Court case, but *Ng* is binding as Eighth Circuit precedent.

abuse, in exchange for millions of dollars in federal funds. This agreement was entered into for the sole benefit of the students, the Plaintiffs in this case, who went to college to get an education, get prepared for careers, learn how to live on their own and other life skills, perhaps play a sport they loved collegiately, and to form lifelong friendships and relationships. In essence, the government paid OSU to ensure that its students were afforded these opportunities through equal protection under the law.

But OSU robbed Plaintiffs of these experiences. It turned a blind eye to a rampant sexual predator it employed for two decades, allowing him carte blanche to drug, sodomize, masturbate, fondle, grope and gawk at hundreds (likely thousands) of male students. When confronted with the fact that OSU deliberately and knowingly robbed them of equal protection under the law, the students who survived Dr. Strauss's abuse brought suit to recoup their damages that were caused because OSU failed to uphold its bargain. The private right of action afforded to them via Title IX, 20 U.S.C. § 1681(a), and expressly provided in subsequent case law in *Cannon, Franklin,* and their progeny, gives claimants the right to collect all money damages available to any other third-party beneficiary to a contract. *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 76 (1992). These damages must make the aggrieved party whole again and include all the ordinarily available contract damages.[3] *Barnes v. Gorman,* 536 U.S. 181, 187 (2002) ("[W]e have held that under Title IX, . . . a recipient of federal funds is nevertheless subject to suit for compensatory damages and injunction, forms of relief traditionally available in suits for breach of contract." (citations omitted)). To make these plaintiffs whole, emotional distress damages should be allowed.

---

[3] At the very least, OSU should disgorge to Plaintiffs all federal money accepted by OSU in exchange for upholding their Title IX obligations, but ultimately wasted because it failed to protect its students from sexual assaults.

6

### III. The availability of damages other than emotional distress is not a question before this Court.

OSU's response addresses issues beyond the Court-ordered topic of briefing. Because those issues will affect the *Snyder-Hill* Plaintiffs, they joint this one part of the brief, which addresses the scope of the legal question before this Court.[4]

In July, this Court ordered Plaintiffs to file a brief "explaining how emotional distress damages are available in these cases notwithstanding the Supreme Court's decision in *Cummings v. Premier Rehab Keller*, *PLLC*, 596 U.S. 212 (2022) and the Sixth Circuit's later decision in *S.C. v. Metro. Gov't of Nashville*, 86 F.4th 707 (6th Cir. 2023)." Case Management Order 3 at 3 (July 1, 2024). That was the topic of the brief filed by the other Plaintiff groups. *See Gonzales v. The Ohio State Univ.*, 2:23-cv-3051, ECF No. 73 (S.D. Ohio).

OSU's response extends beyond the Court-ordered topic of this briefing: It seeks a ruling that other categories of damages, beyond emotional distress, are also unavailable. For example, OSU argues that "Plaintiffs *additionally* cannot recover any other form of damages that resembles emotional distress damages or is speculative, indeterminate, or unforeseeable." OSU's Br. at 10 (ECF 79 at PageID 1215) (emphasis added). And it asks the Court to "hold [both] that (1) emotional distress damages are . . . unavailable to plaintiffs here"—the proper topic of this briefing—"*and* (2) damages that are 'in sum and substance' emotional distress damages and/or

---

[4] On the one legal question before this Court, the *Snyder-Hill* Plaintiffs are differently situated from the other Plaintiffs because they are not seeking emotional distress damages and so did not foresee participating in this briefing in any form. Because OSU's strayed from the scope of Court's order raises questions that would implicate the remedies available to the *Snyder-Hill* Plaintiffs, they were compelled to join this portion of the brief to urge the Court to limit its ruling to the question the Court presented in its July order: whether emotional distress damages are available under Title IX.

7

that arise from emotional distress damages . . . , as well as any other indeterminate, speculative, and unforeseeable damages . . . are not available to plaintiffs here"—a topic beyond the scope of the Court's order. *Id.* at 18 (emphasis added).

The Court should not rule on issues beyond the scope of its July order, which directed briefing on the narrow question of "how emotional distress damages are available in these cases." Case Management Order 3 at 3 (July 1, 2024). During discovery, all parties will have the opportunity to probe the bounds, types, and determinacy of Plaintiffs' other damages. After that, OSU will have opportunities, in the ordinary course of litigation, to move to foreclose damages it believes are unavailable. And at that stage all Plaintiffs, not only those currently pursuing emotional distress damages, will respond.

**IV.    It would be premature for this Court to determine what other damages are barred prior to discovery.**

OSU wants to go further than the prompt provided by the Court by arguing that specific types of damages that are not labeled "emotional distress damages" are also barred by *Cummings*. OSU's Br. at 10 (ECF 79 at PageID 1215). Because OSU has exceeded the scope of this Court's prompt by raising this argument, the Court can, and should, stop here. *See supra* Part III. The narrow scope of the Court's posed question is especially appropriate given that broad scope of damages potentially available post-*Cummings*, and the prematurity of assessing the availability of such potential damages in any given case prior to discovery.

*Cummings* does not purport to limit other types of cognizable injury and certainly does not bar recovery of all non-economic damages under the Rehabilitation Act or Title II of the ADA. *Cummings v. Premier Rehab Keller, P.L.L.C.,* 596 U.S. 212, 221 (2022). Post-*Cummings* cases show how broad and diverse these injuries can be. In *Doe v. University of Kentucky*, the Sixth Circuit held that Title IX plaintiffs may recover for the discriminatory harm resulting from their

8

injury. 111 F.4th 705, 724 (6th Cir. 2024). Contrary to OSU's position, *Doe* did not hold that discrimination damages are merely an *element* of the claim. Rather, the Court held that "discrimination damages" are recoverable and thus allow a plaintiff to maintain standing. *Id.* ("But [Defendant University of Kentucky] mischaracterizes Doe's injury. Doe alleges she was deprived "of equal access to the educational benefits and opportunities provided by the University."). In so doing, it cited Justice Kavanaugh's concurrence in *Muldrow v. City of St. Louis* and said: "Discrimination is itself a harm." *Id.* (citing 601 U.S. 346, 365 (2024)).

District court cases further demonstrate the breadth of potential recoverable damages. Courts have found that damages arising from lost opportunities are "entirely appropriate in a traditional contract case." *Montgomery v. District of Columbia*, 2022 WL 1618741, at *25 (D.D.C. May 23, 2022) (citing Restatement (Second) of Contracts § 347 cmt. A (Am. L. Inst. 1981)). In *Montgomery*, a mentally ill plaintiff was incarcerated for 5+ years following multiple interrogations by law enforcement, where they not only failed to accommodate his disabilities, but took advantage of them to elicit incriminating statements. *Montgomery*, 2022 WL 1618741, at *1–6. In the civil suit that followed, the Court held that he could recover any damages arising from "the opportunity he lost when he was denied the ability to meaningfully access and participate in his interviews." Id. at *25; *see also Doe v* In a Title IX case, these may include lost educational opportunities. *E.g.*, *Doe v. Fairfax Cnty. Sch. Bd.*, No. 1:18-cv-614, 2023 WL 424265, at *4-5 (E.D. Va. Jan. 25, 2023). Courts have held that lost future wages may also be recovered. *E.g.*, *Doe v. Loyola Univ. of Chi.*, No. 18-7335, Doc. 215 (N.D. Ill. Aug. 8, 2024) (finding that lost wages from failing to graduate from the plaintiff's school of choice are recoverable); *A.T. v. Oley Valley Sch. Dist.*, No. 17-4983, 2023 WL 1453143, at *4 (E.D. Pa. Feb. 1, 2023) (same, for

9

younger students). The same goes for physical injuries. *E.g.*, *B.R. v. F.C.S.B.*, ___ F. Supp. 3d ____, No. , 2024 WL 1254826, *6 (E.D. Va. Feb. 26, 2024).

Thus, Courts may allow Title IX plaintiffs to pursue damage theories rooted in expectation-interest and discriminatory harm and may fashion those remedies appropriately given the facts of the case and the resulting breach. Plaintiffs here lost all opportunity to have a meaningful and fruitful college experience, following the very first interaction with Strauss, which ultimately changed their life trajectories and caused significant, lifelong resulting damages.

Given all the possible damages available in contract actions, and thus Title IX suits, deciding now what damages Plaintiffs can recover is premature. OSU is asking the Court to slam the door on recovery of a broad swath of contract damages before discovery has started and—perhaps most importantly—expert reports have been exchanged. Courts have refused to decide what types of damages are available at early stages because parties typically do not develop the exact contour of the damages sought until the end of discovery. *See Doe v. Univ. of Va.*, 2024 WL 1346913, at *6 (W.D. Va. Mar. 29, 2024) (refusing to decide what damages were available after *Cummings* on a motion to dismiss). This endeavor is best saved for after a full factual record is developed so Plaintiffs can fully explain how and why these damage categories fall within the traditional categories allowed under contract actions. For example, Plaintiffs intend to show how their lost income damages are certainly not "speculative, indeterminate, or unforeseeable" OSU's Br. at 10 (ECF 79 at PageID 1215).

Once the parties have conducted full fact discovery, disclosed and deposed each other's designated experts, engaged in summary judgment briefing and held bellwether trials, the Court may decide if a limitation on damages is appropriate based on a fully developed, rich record. *See B.R. v. F.C.S.B.*, ___ F. Supp. 3d ____, No. , 20214 WL 1254826, *4–8 (E.D. Va. Feb. 26, 2024)

10

(extensively reviewing expert reports and other fact discovery to determine what damages plaintiff could recover). Indeed, *B.R.* shows how intensive reviewing categories of damages can be. The court there needed to decipher the various categories of damages, review expert reports, and evidence produced during discovery. *Id.* The court could only wade through what damages could survive to trial after doing so.

This issue was not within the scope of the Court's July order, and the record required to evaluate these thorny issues is not before the Court. The Court should not accept OSU's invitation to limit damages beyond emotional distress, the Court-ordered topic of this briefing.

### Conclusion

The Fourteenth Amendment was the primary vehicle for enacting Title IX, and the agreement made wherein the school accepted the federal funds in exchange for keeping its students free of all forms of sex discrimination was the means for ensuring its goals were met and its Congressional intent was carried out. Because this contract was made only for the reason of promulgating Title IX's purpose, for the sole benefit of the people on campus, it stands to reason that those people are allowed to recover all the damages that flow from the breach. Plaintiffs respectfully ask the Court to allow them to seek all compensatory damages and find that emotional distress damages are available.

Respectfully submitted,

*/s/ Rex A. Sharp*
Rex A. Sharp
Sarah T. Bradshaw
Nathan A. Kakazu
SHARP LAW, LLP
4820 W. 75th Street
Prairie Village, KS 66208

11

(913) 901-0505
rsharp@midwest-law.com
sbradshaw@midwest-law.com
nkakazu@midwest-law.com

Simina Vourlis (0046689) (Trial Attorney)
The Law Offices of Simina Vourlis
856 Pullman Way
Columbus, OH 43212-3860
Phone: (614) 487-5900
Fax: (614) 487-5901
Email: svourlis@vourlislaw.com

Robert Allard
CERRI BOSKOVICH AND ALLARD, LLP
96 North Third Street, Suite 620
San Jose, CA 95112
(408) 289-1417
(408) 289-8127 fax
rallard@cmalaw.net

Stephen Estey
ESTEY & BOMBERGER LLP
2869 India Street
San Diego, CA 92103
619-295-0035
619-295-0172 fax
steve@estey-bomberger.com

Daniel R. Karon
KARON LLC
700 W. St. Clair Ave., Suite 200
Cleveland, OH 44113
Tel.: 216.622.1851
dkaron@karonllc.com

Joseph Sauder
SAUDER SCHELKOPF LLC
555 Lancaster Avenue
Berwyn, PA 19312
(610) 200-0580
(610) 421-1326
jgs@sstriallawyers.com

Counsel for the *Gonzales* Plaintiffs (*Gonzales, et al.*, Case No. 2:23-cv-3051)

/s/Benjamin D. Bianco
Mitchell Schuster, Esq. (pro hac vice forthcoming)
Benjamin D. Bianco, Esq. (admitted pro hac vice)
Meister Seelig & Fein PLLC
125 Park Avenue, 7th Floor
New York, New York 10017
(212) 655-3500
(212) 655-3535 (facsimile)
ms@msf-law.com
bdb@msf-law.com

John C. Camillus, Trial Attorney (0077435)
Law Offices of John C. Camillus, LLC
P.O. Box 141410
Columbus, Ohio 43214
(614) 992-1000
(614) 559-6731 (facsimile)
jcamillus@camilluslaw.com

Counsel for the *John Doe* Plaintiff (*John Doe*, Case No. 2:23-cv-02996)

/s/Rocky Ratliff
J.C. Ratliff (0027898)
Rocky Ratliff (0089781)
200 West Center Street
Marion, Ohio 43302
Telephone: 740.383.6023
Facsimile: 740.383.2066
attorney.ratliff@gmail.com
attorneyrockyratliff@gmail.com

Counsel for the *Knight* Plaintiffs (*Knight, et al.* Case No. 2:23-cv-02994)

Richard W. Schulte (0066031) (Trial Attorney)
Jacob A. Gebelle (0093528)
WRIGHT & SCHULTE, LLC
865 S. Dixie Dr.
Vandalia, OH 45377
(937) 435-7500
(937) 435-7511 facsimile
rschulte@yourlegalhelp.com
jgebelle@yourlegalhelp.com

Dennis P Mulvihill
Wright & Schulte, LLC
31100 Pinetree Road
Suite 225
Ste 620
Pepper Pike, OH 44124
dmulvihill@yourlegalhelp.com

Michael L Wright
Steve Behnke
Wright & Schulte, LLC
130 W. Second Street, Suite 1600
Dayton, OH 45402
mwright@yourlegalhelp.com
sbehnke@legaldayton.com

Counsel for the *Wright & Schulte* Plaintiffs (*John Does 162, et al.*, Case No. 2:23-cv-02991)


/s/ Ilann M. Maazel
Ilann M. Maazel (admitted pro hac vice)
Debra L. Greenberger (admitted pro hac vice)
Sonya Levitova (admitted pro hac vice)
Ariadne M. Ellsworth (admitted pro hac vice)
Emery Celli Brinckerhoff Abady Ward & Maazel LLP
600 Fifth Avenue
New York, New York 10020
Phone: (212) 763-5000
Fax: (212) 763-5001
E-Mail: imaazel@ecbawm.com
E-Mail: dgreenberger@ecbawm.com
E-Mail: slevitova@ecbawm.com
E-Mail: aellsworth@ecbawm.com

Scott E. Smith (0003749)
Scott Elliott Smith, LPA
2727 Tuller Pkwy, Suite 140
Dublin, Ohio 43017
Phone: (614) 846-1700
Fax: (614) 486-4987
E-Mail:ses@sestriallaw.com

Adele P. Kimmel (admitted pro hac vice)

14

                                      Alexandra Z. Brodsky (admitted pro hac vice)
Public Justice
1620 L Street, NW, Suite 630
Washington, DC 20036
Phone: (202) 797-8600
Fax: (202) 232-7203
E-mail: akimmel@publicjustice.net
E-mail: abrodsky@publicjustice.net

Attorneys for *Snyder-Hill* Plaintiffs
Joining for purposes of Part III only

15

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed electronically on October 17, 2024. Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel. The parties may access this filing through the Court's ECF system.

/s/ Rex. A. Sharp