## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| STEVE SNYDER-HILL, et al., | ) | Case No. 2:23-cv-02993 |
| | ) | |
| Plaintiffs, | ) | Judge Michael H. Watson |
| | ) | |
| v. | ) | Magistrate Judge Elizabeth P. Deavers |
| | ) | |
| THE OHIO STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| WILLIAM KNIGHT, et al., | ) | Case No. 2:23-cv-02994 |
| | ) | |
| Plaintiffs, | ) | Judge Michael H. Watson |
| | ) | |
| v. | ) | Magistrate Judge Elizabeth P. Deavers |
| | ) | |
| THE OHIO STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| EDWARD GONZALES, et al., | ) | |
| | ) | Case No. 2:23-cv-3051 |
| Plaintiffs, | ) | |
| | ) | Judge Michael H. Watson |
| v. | ) | |
| | ) | Magistrate Judge Elizabeth P. Deavers |
| THE OHIO STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## STIPULATED ORDER REGARDING PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND SCANNED HARD-COPY DOCUMENTS

This order will govern discovery of electronically stored information ("ESI") and scanned hard-copy documents (collectively, "Data") in this case[1] as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules (hereafter, the "Protocol").

---

[1] This Protocol is stipulated to by Counsel for the 3 above-captioned cases with Discovery Plaintiffs and Defendant Ohio State.

## I. GENERAL PROVISIONS

### A. Applicability.

This Protocol will govern the production of computer-generated information or data of any kind, located on computers, file servers, disks, tape, or other real or virtualized devices or media ("ESI") and the production of scanned hard-copy documents by all Parties identified in the above-captioned case (the "Parties").

### B. Cooperation.

The Parties will work cooperatively to fashion reasonable, precise, and cost-effective search strategies and to agree upon and implement appropriate measures for quality assurance and quality control. The Parties are obliged to be forthcoming and transparent in disclosing their use of mechanized tools to cull Data and are encouraged to bring technically adept personnel together to resolve e-discovery issues.

### C. Definitions.

1. **"Custodial ESI"** refers to ESI associated with a particular individual, such as ESI authored or received by a document custodian.

2. **"Documents"** includes writings, drawings, graphs, charts, photographs, sound recordings, images, and other data, records, or data compilations stored in any medium from which information can be obtained.

3. **"Electronically stored information"** or **"ESI,"** as used herein, means and refers to computer-generated information or data of any kind, located on computers, file servers, disks, tape, or other real or virtualized devices or media. ESI may include, but is not limited to:

(a) Digital communications and social media posts (*e.g.*, e-mail, voice mail, text messaging, instant messaging, and ephemeral messaging (Snapchat, etc.));

(b) E-mail server stores (*e.g.*, Lotus Domino .NSF or Microsoft Exchange .EDB);

(c) Word processed documents (*e.g.*, Word or WordPerfect files and drafts);

(d) Spreadsheets and tables (*e.g.*, Excel or Lotus 123 worksheets);

(e) Accounting application data (*e.g.*, QuickBooks, Money, Peachtree data);

(f) Image and facsimile files (*e.g.*, .PDF, .TIFF, .JPG, .GIF images);

(g) Sound recordings (*e.g.*, .WAV and .MP3 files);

(h)    Video and animation (*e.g.*, .AVI and .MOV files);

(i)    Databases (*e.g.*, Access, Oracle, SQL Server data, SAP);

(j)    Contact and relationship management data *(e.g.*, Outlook, ACT!);

(k)    Calendar and diary application data (*e.g.*, Outlook PST, blog entries);

(l)    Presentations (*e.g.*, PowerPoint, Corel Presentations); and

(m)    Backup and archival files (*e.g.*, Veritas, Zip, .GHO).

4.    The inclusion of any of the examples listed in paragraph I.C.3 does not suggest that they are reasonably accessible or that any Party is required to undertake their collection or production.

5.    **"Metadata"** means (i) information embedded in or associated with a file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, custody, usage, and/or validity of the electronic file; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

6.    **"Native Format"** means and refers to the format of ESI in which it was generated and/or as used by the Producing Party in the usual course of its business and/or in its regularly conducted activities.

7.    **"Optical Character Recognition"** or **"OCR"** means the file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

8.    **"Static Image"** means or refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems.

**D.    Documents Previously Collected.**

The Parties do not have an obligation to re-collect, re-process, or re-produce Data that was collected, processed, or produced prior to the entering of this Protocol.

**E.    Dispute Resolution.**

The Parties will promptly notify one another of any disputes regarding the production format of Data, and any Party receiving notice of a dispute will acknowledge receipt and, within five business days of being notified, will either provide a substantive reply in writing or explain

3

why more time is needed to respond. The Parties agree to meet and confer on any disputed issue prior to submission to the Court.

### F. Preservation Obligation and Date.

The Parties have and will preserve Data as required by the Federal Rules of Civil Procedure, including issuing litigation holds and taking the steps necessary to preserve potentially relevant Data. If any Party is unable to produce Data in a manner consistent with the terms of this Protocol, that Party must notify the other Parties regarding areas of the Protocol for which it is not capable of complying, and meet and confer if necessary prior to production of the related Data.

## II. GENERAL PRODUCTION FORMAT PROTOCOLS

### A. Production Media and Protocol.

Productions shall be made via secure FTP site or other means agreed-upon by the Parties.

1. Each piece of Production Media shall be encrypted and assigned a production number ("Production Volume Number") or other unique identifying label corresponding to the date of the production of documents on the Production Media.

2. The Producing Party shall accompany all document productions with a transmittal cover letter with information sufficient to identify all accompanying media, identifying (1) the date of production, (2) the production wave or volume, (3) the Bates ranges for the documents encompassed within the production, and (4) a general description of the subject matter of the production (i.e., regulatory documents, custodial documents of Jane Doe, etc.).

3. If the Producing Party produces documents via secure File Transfer Protocol ("FTP") site, the Producing Party shall specify the date through which the materials will remain available via the secure FTP site and the Producing Party shall, within a reasonable time, accommodate reasonable requests from another Party or Parties that documents be reposted to the FTP site.

### B. Image Format and Color.

The default production format for images shall be single page 300 DPI black and white TIFF images, or multi-page PDFs. The default production format for photos, social media posts, and medical records shall be in color, as single-page, 300 DPI JPG images with JPG compression and a high-quality setting so as to not degrade the original image, or multi-page color PDFs. The Parties may make reasonable requests for the reproduction of specific documents in alternative formats.

4

### C. Load Files.

Each production of Data shall be accompanied by concordance or summation load files (depending on the preference of the Requesting Party) and comma delimited load files (.dat and .opt) as per **Appendix A**, containing a field with the full path and filename to files produced in native format and also containing the information described in **Appendix B**, to the extent the information is available in the Data (except for vendor-generated fields related to the litigation production, such as "BEGDOC", "ENDDOC", basis for redaction, and confidentiality designations). All metadata shall be provided in UTF-8. For scanned hard-copy documents, the Parties need only populate the following fields: "BEGDOC," "ENDDOC," "PROD VOLUME," "CUSTODIAN," "SOURCE," "CONFIDENTIAL," and "REDACTION," as well as "BEGATTACH" and "ENDATTACH" fields where applicable.

### D. Text Files.

For all Data containing extracted full text or OCR text, the Producing Party shall provide searchable document-level .txt files (named using the Bates start "BEGDOC"), which shall reside in the text subdirectory of each production volume alongside corresponding separate image and native subdirectories. Electronic text must be extracted directly from the native electronic file unless the document requires redaction, is an image file, or is a native electronic file that does not contain text to extract (e.g., non-searchable PDFs). In these instances, and in the case of imaged hard-copy documents, to the extent possible a text file shall be created using OCR and shall be produced in lieu of extracted text. Extracted text shall be provided in UTF-8. Extracted text shall include all comments, revisions, tracked changes, speaker's notes, and text from documents with comments or tracked changes, and hidden worksheets, slides, columns, and rows.

### E. Databases and Structured Data.

The Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured or aggregated data source or otherwise maintained by an application (e.g., Microsoft Teams, Slack, Microsoft Access, SharePoint, Oracle, Salesforce, ACT!, or any other messaging or proprietary databases).

### F. Other Data Sources.

The Parties share a desire to ensure that Data is produced in a functional search and review format. The Parties recognize that certain Data may not be amenable to the proposed technical specifications. In such circumstances, the Parties will meet and confer regarding the appropriate form of production.

### G. Bates Numbering.

Each page of a produced image shall have a unique Bates number electronically "burned" onto the image at a location that does not unreasonably obliterate or obscure any information from the source document. Each TIFF image or native file assigned a Bates number shall be assigned a Bates number that is unique and maintains a constant length across the entire document production.

No other legend or stamp will be placed on the document image other than confidentiality legends (where applicable) or redactions.

**H.     Confidentiality.**

TIFF images or PDFs produced in discovery may be labeled with confidentiality designations in accordance with the procedures laid out in paragraph 5 of the Protective Order entered in each respective case. For materials produced in native format, the Producing Party shall supply fielded data identifying the confidential treatment of each Document designated for confidentiality and will endorse the TIFF placeholder accompanying the native file with the appropriate confidentiality designation, and shall name the file with the Bates number followed by the confidentiality designation and the file name. A Producing Party's failure to make a designation through fielded data, an endorsing of the TIFF image, or a naming of the file may be corrected by notifying the Requesting Party of the mistaken designations of confidential materials.

**I.      De-duplication.**

Global de-duplication (de-duplication both within a custodian's documents and across all custodians' documents) is to be executed at the document family level. De-duplication shall be done on exact duplicate documents using family level hash values derived from industry standard hashing algorithms.

1.      No Party shall remove near-duplicate documents.

2.      Standalone documents shall not be de-duplicated against email attachments.

3.      In the event of a rolling production of documents, to the extent the Producing Party de-duplicates across custodians the Producing Party shall provide overlay load files with updated custodian and AllCustodians metadata fields to indicate custodians for any duplicate copy of a document that was not produced. The overlay will be produced 30 days before the end of the discovery period if further productions have rendered them outdated.

4.      Any document containing handwritten notes, highlighting, alterations, or markings would not be considered a duplicate of another version and if responsive must be produced as an original document.

**J.      Lost, Destroyed, or Irretrievable Data.**

If a Producing Party learns that responsive Data that once existed was lost, destroyed, or is no longer retrievable as a result of acts or circumstances not occurring in the ordinary course of business, the Producing Party shall explain where and when the responsive Data was last retrievable in its original format and disclose the circumstances surrounding the change in status of that responsive Data, whether that information is available from other sources, and whether any backup or copy of such original responsive Data exists.

**K.      Redactions.**

Except as provided in this Protocol, the Parties may redact information that is privileged, attorney work product, sensitive personally identifying information, protected by applicable federal law (including the Family Educational Rights and Privacy Act), or otherwise protected from discovery. Privilege redactions will state, over the redacted portion, "Redacted–Privileged" (or similar language). Redactions for FERPA or PII must state, over the redacted portion, "Redacted–PII" (or similar language denoting the basis for the redaction). In emails, the Producing Party(ies) will not redact the names of recipients or the subject line of the emails, unless the subject line is itself privileged or contains the sensitive information described above, in which case only so much of the subject line will be redacted as may be needed. The Parties will produce redacted documents in TIFF format with corresponding searchable OCR text (or in searchable PDF if production format dictates). For file types produced with redactions in native format, the associated metadata shall be similarly protected from disclosure. All redactions for privilege and/or work product will be included on a privilege log.

Such redactions will be made sparingly, and the Redacting Party must furnish the recipient with sufficient information to assess whether the redaction is objectionable. Should a Party deem any redaction objectionable, that Party may notify the Party who performed the redactions of such objection and make reasonable requests that the redacting Party provide the recipient with sufficient information to assess whether the redaction(s) is appropriate. After the Redacting Party provides additional information, if the Receiving Party still deems the redaction inappropriate, it may be submitted to the Court.

**L.      Hyperlinked Documents.**

At the request of a Receiving Party, a Producing Party shall make a reasonable effort to collect the version of non-public hyperlinked documents available at the time the parent document was last modified, for potential searching and/or review along with the message containing the hyperlink. To the extent that either the message containing the hyperlink or any hyperlinked documents are responsive, all such documents shall be produced as otherwise required by this Protocol.

**M.      Validation**

If a Producing Party uses TAR or Continuous Active Learning for exclusion, the Producing Party shall take reasonable steps to validate its review process (*i.e.*, using quality control measures to determine whether its production is missing relevant Data or contains substantial amounts of irrelevant Data) and make any necessary adjustments or corrections to its process. If, after reviewing Producing Party's production, the Requesting Party reasonably requests additional information regarding the validation method(s) used by the Producing Party, the Producing Party will disclose the level of end-to-end recall (the percentage of responsive documents in the collection which were identified as responsive by that Producing Party's methodology).

7

### III.   PRODUCTION OF ELECTRONICALLY STORED INFORMATION

**A.   Metadata Fields and Processing.**

1.   **Time Zone:** ESI items shall be processed in a manner that preserves their existing time, date, and time-zone metadata (e.g., the email of a document custodian located in Pennsylvania will be processed as Eastern Time, while a document custodian located in California will be processed as West Coast Time). If GMT time zone is used, then a time-zone offset metadata field must be provided indicating the original time zone in which the custodian of the document received or authored the document.

2.   **Auto Date/Time Stamps:** ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

3.   Except as otherwise set forth in this Protocol, *infra*, ESI files shall be produced with at least each of the data fields set forth in Appendix B that can be extracted from a document.

4.   The Parties are not obligated to manually populate any of the fields in Appendix B if such fields cannot be extracted from the document using an automated process, with the exception of the following fields: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Confidentiality, (g) Redacted (Y/N), and (k) NativeLink fields, which should be populated regardless of whether the fields can be populated pursuant to an automated process.

**B.   Email Thread Suppression.**

No responsive email may be withheld from production solely because it is included in whole or in part in a more inclusive email.

**C.   Social Media.**

ESI may, but does not necessarily, include social media websites (e.g., LinkedIn, Facebook, Twitter, internal intranet social media, etc.). The Parties agree to meet and confer on the production and production format, including metadata, for social media.

**D.   Password-Protected or Encrypted Files.**

With respect to any ESI items that are password-protected or encrypted, the Producing Party will take reasonable steps based on industry standards to break the protection so that the document can be reviewed and/or produced.

### E. Hidden Text.

ESI items processed after the execution date of this Protocol shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes and comments.

### F. Compressed Files.

Compression file types (i.e., .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed fully, resulting in individual folders and/or files and no remaining compressed files. Such compressed file types shall not be produced.

### G. Parent-Child Relationship.

The Parties acknowledge and agree that parent-child relationships within ESI (the association between an attachment and its parent document or between embedded documents and their parent) shall be preserved. Responsive non-privileged electronic documents, attached to an e-mail or embedded within other electronic documents must be mapped to their parent by the beginning Bates number and immediately follow that parent file in the sequence of the production. Email attachments and embedded files or links "BEGATTACH" and "ENDATTACH" fields listing the unique beginning Bates number of the parent documents and ending number of the last attachment must be populated for each child and parent document. If any member of a family group is produced, all members of that group must also be accounted for in the production. If not produced, such documents must include a "not relevant" slip sheet or a slipsheet reflecting "privileged – withheld in full" (or similar language) and logged as privileged.

### H. Text Extracted from ESI Emails.

Text extracted from ESI emails shall include all header information that would be visible if the email was viewed in Outlook including: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), (5) the date and time of the email, and (6) the names of any attachments.

### I. ESI to be Produced in Native Form.

Microsoft Excel and other spreadsheets; Microsoft PowerPoint and other computer slide presentations; media files, such as audio, photo/image, and video files; and other file types that are poorly represented, substantively limited, or degraded when produced in a non-native format shall be produced in their native format. Files produced in native format shall be named with a sequential Bates number followed by the confidentiality designation. A placeholder TIFF with the language "Document Produced in Native" (or similar language) and stamped with assigned Bates number and confidentiality designation shall be included for each native file produced. Although native production of these file types is required, a Defendant is permitted to also produce a Bates-stamped TIFF image if redactions are required for the document. When the native file is produced, the

Producing Party shall preserve the integrity of the electronic document's contents, i.e., its original formatting and metadata.

### J. ESI Not Produced in Native Form.

ESI (in formats other than those subject to automatic Native Format production under paragraph II.I above, or subject to conference regarding structured data under paragraph II.E above) should be produced in a form that retains the material characteristics of the ESI in its native form (*i.e.*, the information, image, searchability, and utility) maintained in the normal course of the Producing Party's business.

## IV. PRIVILEGE ISSUES

### A. Privilege Log Protocol.

For any responsive Document withheld in part or in its entirety, the Producing Party will produce privilege logs in Excel format that permit electronic sorting and searching, except that the Parties shall have no obligation to log information generated on or after March 27, 2018. A Producing Party will produce a separate privilege log for each production within thirty (30) days of the production of documents for which a privilege is asserted. Privilege logs for each custodian must be complete and produced ten (10) days before the custodian's deposition.

### B. Privilege Log.

Responsive information that is withheld from production, in whole or in part, on the basis of privilege or work product, must be disclosed on a privilege log in compliance with the requirements of Federal Rule of Civil Procedure 26(b)(5), identifying the below information to the extent it is reasonably available:

1. The document's bates range;

2. The bates range of any attachment or parent document;

3. The identity of the document author;

4. If an email, the identity of the sender;

5. The identities of the document's recipients (to the extent reasonably discernable);

6. The identities of the people to whom copies were sent;

7. The dates the document was last modified and created (e-doc) or sent (e-mail);

8. The custodian(s) of the document;

9. The type of document (email, spreadsheet, PowerPoint, etc.);

10.     File Name and/or Email Subject (and other details as necessary for Plaintiff to reasonably assess the claim of privilege);

11.     Privilege Basis(es) claimed;

12.     A description of the withheld content explaining the nature of the legal issue for which advice was sought

**C.     Additional Requirements.**

1.      The Parties will identify which of the individuals listed as authors or recipients are attorneys.

2.      Where individuals listed as authors or recipients are not themselves Parties or employees of Parties, their affiliation will be specifically provided.

3.      If an attachment (parent or child) to a document or communication is being withheld, such attachment(s) shall be identified in the privilege log as separate entries. Families of documents being withheld shall be logged together in sequence with the parent document following by any other withheld documents in the document family.

**D.     Challenges to Privilege Claims.**

Following the receipt of a privilege log, a Receiving Party may identify, in writing, any particular document that it believes require further explanation or contends should not be withheld or redacted. If the number of challenged documents is less than one hundred (100), within twenty-one (21) business days of such an identification, the Producing Party must either respond in writing, or explain why more time is needed to respond. Following receipt of the response, if a Receiving Party still disputes the validity of the privilege asserted, the Parties shall meet and confer within seven (7) business days to try to reach a mutually agreeable solution. If they cannot agree, the matter shall be brought to the Court. If the amount of privilege challenges exceeds one hundred (100), the Parties will meet and confer to determine the appropriate amount of time to respond.

**E.     Clawback Requests.**

Clawback demands shall be handled in accordance with paragraph 7 of the Protective Order entered in each respective case.

**V.     MISCELLANEOUS PROVISIONS**

**A.     Third Party Documents.**

A Party that issues a Non-Party subpoena ("Issuing Party") shall include a copy of this Protocol with the subpoena and state that the Parties to this litigation have requested that third parties make reasonable efforts to produce documents in accordance with the specifications set forth herein. Within 14 days of receiving any documents obtained pursuant to a non-party subpoena, the Issuing Party shall produce such documents to all other Parties, except where the

third-party documents are to be used in a deposition occurring less than 14 days after receipt of the documents, in which case the Issuing Party shall produce such documents to all other Parties no later than three (3) days prior to the deposition, or as soon as reasonably practicable if such production occurs thereafter. Nothing in this Protocol is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or third parties to object to a subpoena. If the non-party production is not Bates-stamped, the Issuing Party will endorse the third-party documents with unique Bates prefixes and numbering scheme prior to reproducing them to all other Parties.

### B.      Objections Preserved.

Nothing in this protocol shall be interpreted to require disclosure of information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Except as provided expressly herein, the Parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of documents and Data.

### C.      Effect of Protocol.

The Parties' agreement to this Protocol is without prejudice to the right of any Party to seek an order from this Court to rescind or amend this Protocol for good cause shown. Nothing in this Protocol abridges the rights of any person to seek judicial review or to pursue other appropriate judicial action with respect to any discovery ruling made by the Court in this matter. Any practice or procedure set forth herein may be varied by agreement of the Parties, confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical production of Data.

### D.      Effect on Discovery.

Nothing herein constitutes an admission by any Party that any particular category of discovery is appropriate in this matter or that there exists producible Data.

### E.      Document Unitization for Hard-Copy Documents.

If a hard-copy document consists of more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original document, so that each page will not be split, but instead sequenced and saved together, as they existed in the original. Therefore, when scanning paper documents for production, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records. The parties acknowledge that the original custodians of historical records may not be available to give precise instructions on the proper scanning procedures for their documents, and that some judgment will be necessary when unitizing and scanning hard copy documents.

### F.      Inaccessible Data.

If a Producing Party asserts that certain Data is inaccessible or otherwise unnecessary under the circumstances, or if the Requesting Party asserts that, following production, certain Data is not reasonably usable, the Parties shall meet and confer with their respective technology experts to

discuss resolving such assertions. If the Parties cannot resolve any such disputes after such a meet and confer has taken place, the issue shall be presented to the Court for resolution.

### G. Modification.

This Protocol may be modified by a stipulation of the Parties for good cause shown or by the Court.

**IT IS SO ORDERED.**


DATED: Aug. 21, 2025        s/ *Elizabeth A. Preston Deavers*
                            HON. ELIZABETH DEAVERS




**SO STIPULATED AND AGREED.**

DATED: August 20, 2025

DAVE YOST
ATTORNEY GENERAL OF OHIO

Michael H. Carpenter (0015733) (Trial Attorney)
Timothy R. Bricker (0061872)
Michael N. Beekhuizen (0065722)
David J. Barthel (0079307)
CARPENTER LIPPS LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, OH 43215
Phone: (614) 365-4100
Fax: (614) 365-9145
E-mail:carpenter@carpenterlipps.com
      bricker@carpenterlipps.com
      beekhuizen@carpenterlipps.com
      barthel@carpenterlipps.com

*Special Counsel for Defendant*
*The Ohio State University*


Scott E. Smith (0003749) (Trial Attorney)

13

SCOTT ELLIOTT SMITH, LPA
5003 Horizons Drive, Suite 100
Columbus, Ohio 43220
Phone: (614) 846-1700
Fax: (614) 486-4987
E-Mail: ses@sestriallaw.com

Ilann M. Maazel (admitted pro hac vice)
Debra L. Greenberger (admitted pro hac vice)
Sonya Levitova (admitted pro hac vice)
Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue
New York, New York 10020
Phone: (212) 763-5000
Fax: (212) 763-5001
E-Mail: imaazel@ecbawm.com
E-Mail: dgreenberger@ecbawm.com
E-Mail: sestela@ecbawm.com
E-Mail: slevitova@ecbawm.com
E-Mail: aellsworth@ecbawm.com

Adele P. Kimmel (admitted pro hac vice)
Alexandra Brodsky (admitted pro hac vice)
PUBLIC JUSTICE, P.C.
1620 L Street, NW, Suite
630 Washington, DC 20036
Phone: (202) 797-8600
Fax: (202) 232-7203
E-mail: akimmel@publicjustice.net
E-mail: abrodsky@publicjustice.net

Counsel for the *Public Justice* Plaintiffs (*Snyder-Hill, et al.*, Case No. 2:23-cv-02993)


J.C. Ratliff (0027898) (Trial Attorney)
Rocky Ratliff (0089781)
200 West Center Street
Marion, Ohio 43302
Telephone: 740.383.6023
Facsimile:  740.383.2066
attorney.ratliff@gmail.com
attorneyrockyratliff@gmail.com

Counsel for the Ratliff Plaintiffs (*Knight, et al.* Case No. 2:23-cv-02994)

14

Simina Vourlis (0046689) (Trial Attorney)
The Law Offices of Simina Vourlis
856 Pullman Way
Columbus, OH 43212-3860
Phone: (614) 487-5900
Fax: (614) 487-5901
Email: svourlis@vourlislaw.com

Rex A. Sharp
Sarah T. Bradshaw
Nathan Kakazu
SHARP LAW, LLP
4820 W. 75th Street
Prairie Village, KS 66208
(913) 901-0505
rsharp@midwest-law.com
sbradshaw@midwest-law.com
nkakazu@midwest-law.com

Stephen Estey
ESTEY & BOMBERGER LLP
2869 India Street
San Diego, CA 92103
619-295-0035
619-295-0172 fax
steve@estey-bomberger.com

Daniel R. Karon
KARON LLC
700 W. St. Clair Ave., Suite 200
Cleveland, OH 44113
Tel.: 216.622.1851
dkaron@karonllc.com

Joseph Sauder
SAUDER SCHELKOPF LLC
555 Lancaster Avenue
Berwyn, PA 19312
(610) 200-0580
(610) 421-1326
jgs@sstriallawyers.com

Counsel for the *Sharp Group* Plaintiffs (*Gonzales, et al.*, Case No. 2:23-cv-3051)

**Appendix A: File Formats**

**Image Load Files**

- Every Document referenced in a production image Load File must have all corresponding images, text and Metadata.
- The name of the image Load File must mirror the name of the delivery volume and should have a .LFP, or .OPT extension.
- The volume names must be consecutive (e.g., ABC001, ABC002…). If, for any reason, the volume names are not consecutive, that fact and the reason for the discrepancy shall be promptly disclosed to the party receiving the Documents.
- The Load File must contain one line per image.
- Every image in the delivery volume must be contained in the image Load File. The image key must be named the same as the Bates number of the image.
- Load Files must not span across Media.

**Metadata Load Files**

- Metadata files should be encoded in UTF-8 format.
- The Metadata Load File must use the following delimiters: Column delimiter:
  - ASCII 020
  - Text qualifier: ASCII 254
  - New line:  ASCII 174
- Data for Documents must be produced in only one data Load File throughout the productions, unless that Document is noted as being a replacement Document.
- The first record must contain the information described **Appendix B, to the extent such information is reasonably available**.
- All date and time fields must be produced in "MM/DD/YYYY" and "HH:MM:SS AM/PM (EST)" format, null dates will be blank
- A carriage-return line-feed must be used to indicate the start of the next Document. Load Files must not span across Media.
- The name of the Metadata Load File must mirror the name of the delivery volume, and must have a .DAT extension.
- The volume names must be reasonably consecutive (e.g., ABC001, ABC002…).

**APPENDIX B**
**METADATA FIELDS**

| FIELD NAME | SAMPLE DATA | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|---|
| BEGBATES | ABC000001 | Beginning production number or Bates number for a given file/Document | E-mail and E-Doc |
| ENDBATES | ABC000002 | Ending production number or Bates number for a given file/Document | E-mail and E-Doc |
| BEGATTACH | ABC000001 | Beginning production number or Bates number for the attachment range | E-mail and E-Doc |
| ENDATTACH | ABC000015 | Ending production number or Bates number for the attachment range | E-mail and E-Doc |
| CUSTODIAN(S) | Smith, John; Brown, Julie | Name of person or other data source (non-human) from where Documents/files are produced. *Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions* | All |
| AllCustodians | | List of all custodians associated with Document, i.e. "Custodian" + "Other Custodian" values delimited by semi-colon. | All |

| DocumentType | | Descriptor for the type of Document: **"E-document"** for electronic Documents not attached to e-mails; **"E-mail"** for all e-mails; **"E-attachment"** for files that were attachments to e-mails; and **"Physical"** for Hard-Copy physical Documents that have been scanned and converted to an electronic | All |
|---|---|---|---|
| SUBJECT | Meeting Minutes | Subject line extracted from e-mail message or title from operating system Metadata | E-mail |
| MSGID | | Email system identifier assigned by the host email system. This value is extracted from parent message during processing | E-mail |
| | | | |
| | | | |
| FROM | Smith, John | Sender | E-mail |
| TO | Jones, Tom; Brown, Julie | Recipient | E-mail |
| CC | Cain, John | Copyee | E-mail |
| BCC | Stevens, Lisa | Blind Copyee | E-mail |
| PAGES | 12 | Number of pages in the Document | E-Doc |

| VOLUME | 2 | Number on production Media or number of online transmission | All |
|---|---|---|---|
| PARENTMSGID/Group ID | | Where the item is an email which is a REPLY or FORWARD, the MSGID of the original email which was REPLIED to or FORWARDED | E-mail |
| DATESENT | 02/08/2008 08:59 | Sent date of an email message in the following format: MM/dd/yyyy MM is month | E-mail |
| TIMESENT | 08:59 | Sent time of an email message in the following format: HH:mm mm is minutes | E-mail |
| DATERCVD | 02/08/2008 | Received Date an email message was received in the following format: MM/dd/yyyy MM is month | E-mail |
| TIMERCVD | 08:59 | Received time an email message was received in the following format: HH:mm mm is minutes | E-mail |
| E-mail Outlook Type | .msg | Type of Outlook item, e.g., e-mail, calendar item, contact, note, task | Outlook or similar system |

| Importance | High Importance | Indicates priority e-mail | E-mail |
|---|---|---|---|
| AUTHOR | Smith, John | Name of person who created Document | E-Doc |
| DATECRTD | mm/dd/yyyy | Creation Date | E-Doc |
| TIMECRTD | 0:00 AM/PM | Creation Time | E-Doc |
| LASTEDITEDBY | John Smith | Last editor extracted from Document Metadata | E-Doc |
| FILENAME | October Agenda.doc | Original file name of native Document | E-Doc |
| FILE PATH(S) | C:\My Documents\Agenda | Pathway(s) for Documents, including unproduced duplicates; values, delimited by semi-colons, corresponding to ALLCUSTODIANS values | E-mail and E-Doc |
| TEXT PATH | D:001\RET000005.txt | Relative path to Document level text file | E-mail and E-Doc |
| DATE CREATED | 02/08/2008 | Date Document was created in the following format MM/dd/yyyy MM is month | E-Doc |
| TIME CREATED | 08:59 AM | Time the Document was created in the following format HH:mm mm is minutes | E-Doc |
| DATE LAST MODIFIED | 02/08/2008 | Date the Document was last modified in the following format MM/dd/yyyy MM is month | E-Doc |

| TIME LAST MODIFIED | 08:59 AM | Time the Document was last modified in the following format HH:mm mm is minutes. | E-Doc |
|---|---|---|---|
| FILEEXT | Msg | File extension of native Document | E-mail and E-Doc |
| FILESIZE | 50kb | Size of the original email or e-Document | E-mail and E-Doc |
| DOCUMENT TYPE | Application/ms word | Describes the type of Document. (mime type) | E-mail and E-Doc |
| PAGE COUNT | 16 | Number of pages for the Document | All |
| HASH | d131dd02c5e6eec5694d0 698aff85c2fsch5876217e ab40045733b8fb789 | MD5 or SHA1 Hash Value | E-mail and E-Doc |
| NATIVEFILE PATH | D:\001\ABC000005.xls | Path or hyperlink to Documents being produced in native file format | Native |
| CONFIDENTIALITY | Confidential | Indicates the confidentiality designation of the produced Document pursuant to any applicable Protective Order | All |
| ParentDate | mm/dd/yyy | DOCDATE of the parent item | All |
|  |  |  |  |
| Date Last Printed | mm/dd/yyyy | Date the Document was last printed | All |

| REDACTION | Yes | Indicates whether the Document is redacted | All |
|---|---|---|---|
| RedactionReason | Privilege | Basis of redaction. If more than one, separate reasons by semi-colons | All |