# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**JOHN DOE 162,** *et al.,*

        **Plaintiffs,**

            **v.**

**THE OHIO STATE UNIVERSITY,**

        **Defendant.**

**Case No. 2:23-cv-2991**
**Judge Michael H. Watson**
**Magistrate Judge Elizabeth P. Deavers**

---

**STEVE SNYDER-HILL,** *et al.,*

        **Plaintiffs,**

            **v.**

**THE OHIO STATE UNIVERSITY,**

        **Defendant.**

**Case No. 2:23-cv-2993**
**Judge Michael H. Watson**
**Magistrate Judge Elizabeth P. Deavers**

---

**WILLIAM KNIGHT,** *et al.,*

        **Plaintiffs,**

            **v.**

**THE OHIO STATE UNIVERSITY,**

        **Defendant.**

**Case No. 2:23-cv-2994**
**Judge Michael H. Watson**
**Magistrate Judge Elizabeth P. Deavers**

---

**STEVE GRESOCK,**

      **Plaintiff,**                              **Case No. 2:23-cv-2996**
                                            **Judge Michael H. Watson**
      **v.**                                    **Magistrate Judge Elizabeth P. Deavers**

**THE OHIO STATE UNIVERSITY,**

      **Defendant.**

---

**EDWARD GONZALEZ,** *et al*.,

      **Plaintiffs,**

                                      **Case No. 2:23-cv-3051**
      **v.**                                    **Judge Michael H. Watson**
                                      **Magistrate Judge Elizabeth P. Deavers**

**THE OHIO STATE UNIVERSITY,**

      **Defendant.**

---

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion to Compel Documents and Information from Defendant Related to the Perkins Coie Investigation and Report.  (ECF No. 135.[1])  Defendant, The Ohio State University ("OSU"), has filed a Response, and Plaintiffs have filed a Reply.  (ECF Nos. 139, 141.)  Plaintiffs' Motion is **GRANTED**, to the extent set forth below, with the stated requirement that the parties meet and confer.

### I.

---

[1] All docket citations correspond to filings made in *Snyder-Hill v. The Ohio State University*, Case No. 2:23-cv-2993.

The larger background surrounding the investigation of Dr. Richard Strauss which underlies this current discovery dispute is well known and will not be repeated at any length here.  For purposes of the subject Motion, the following, more limited, background is relevant. Plaintiffs explain that they have requested certain information and documents from OSU about the Perkins Coie Report ("Report") and Investigation:

(1) Ohio State's role in the investigation, specifically collecting, reviewing, and providing documents to Perkins Coie (Interrogatories Nos. 18-21, Requests for Production Nos. 26-29);

(2) Ohio State's documents and communications (both internally at Ohio State and with external parties, including Perkins Coie) about and/or underlying the investigation, public-facing communications about the investigation, or Dr. Strauss (Requests for Production Nos. 1, 3, 7, 10-15); and

(3) Perkins Coie's retention (Request for Production No. 2).

(ECF No. 135 at 4, characterizing the requested discovery as "the Perkins Coie Requests.")  In terms of numbers, the current Motion involves fourteen Requests for Production and four Interrogatories.

According to Plaintiffs, OSU has taken two approaches to these Perkins Coie Requests. For certain Requests, Plaintiffs assert that OSU has objected completely and refused to respond or produce any documents.  For other Requests, Plaintiffs claim that OSU has produced a very limited set of responsive documents or directed Plaintiffs to the entirety of its production. Plaintiffs explain that the failure to resolve the issue, despite good faith meet and confers, necessitated their current Motion.

In its Response, OSU explains that, using Plaintiffs' search term "Perkins" for the period from January 1, 2017, to the present, it has identified approximately 118,000 responsive documents.  (Declaration of Joseph Kunkel, ECF No. 139-1 at ¶ 5, "Kunkel Decl.")  Preliminary

3

research of those 118,000 documents using the names of OSU's internal and outside counsel indicate that roughly 49,500, or 42%, "are likely to be privileged and/or work product protected." (*Id*. at ¶ 6.)  OSU estimates that the necessary review of these documents would require approximately 5,400 hours and months to complete—at an estimated cost to OSU of approximately $1,350,000.00. (*Id*. at ¶ 7.)

As will be detailed below, OSU broadly objects to all the requests at issue in Plaintiffs' current Motion on numerous bases.  Nevertheless, for ease of reference, the full text of the Interrogatories and RFPs at issue is set forth below verbatim:

**INTERROGATORY NO. 18**: Describe how documents were transmitted or sent or delivered to Perkins Coie from OSU during Perkins Coie's investigation of the abuse committed by Dr. Strauss.

**INTERROGATORY NO. 19**: Identify all individuals formerly or currently employed by OSU who compiled, gathered, and/or transmitted to Perkins Coie any documents in relation to Perkins Coie's investigation of the abuse committed by Dr. Strauss, including the following documents, Bates stamped:

    a. CTRL000001 – 6000;
    b. CTRL_HC_00000001- 170000;
    c. RHS_00001 – 900;
    d. STRAUSSREFERENCE0000001 – 14000.

**INTERROGATORY NO. 20**: Identify all individuals formerly or currently employed by OSU who oversaw, directed, or instructed individuals identified in Interrogatory 19 regarding the compilation and delivery of these documents to Perkins Coie.

**INTERROGATORY NO. 21**: Identify all individuals formerly or currently employed by OSU who were tasked with reviewing documents before they were provided to Perkins Coie in advance of or during their investigation.

**REQUEST FOR PRODUCTION NO. 1:** All documents (including communications within Ohio State, communications between you and any external party advising you on public relations, reputational management and/or crisis management and communications between you and any member of the press) concerning the investigation into Dr. Strauss's abuse that you announced in April

4

2018 and the subsequent litigation, including but not limited to all documents underlying and related to:

a. Ohio State news releases issued on: April 5, 2018; May 3, 2018; June 7, 2018; July 20, 2018; August 16, 2018; August 30, 2018; September 7, 2018; November 15, 2018; November 16, 2018; February 22, 2019; May 17, 2019; May 31, 2019; October 1, 2019; November 21, 2019; February 27, 2020; March 6, 2020; May 8, 2020; October 13, 2020; December 17, 2020; May 7, 2021; April 15, 2022; and July 22, 2022.

b. Campus-wide email communications from OSU President Drake on: May 3, 2018; June 7, 2018; July 20, 2018; November 15, 2018; February 1, 2019; May 17, 2019.

c. Emails from President Drake to alumni sent on: May 21, 2018; February 1, 2019; May 17, 2019; October 1, 2019.

d. Emails from President Drake to former student-athletes sent on: June 12, 2018; February 1, 2019; May 17, 2019; October 1, 2019.

e. Statements by President Drake on May 20, 2019.

f. The Affirmation of Commitment to resolve claims involving Richard Strauss, Resolution No. 2020-100, made on February 27, 2020.

g. Content and language maintained on straussinvestigation.osu.edu, including but not limited to the questions and answers provided for the media.

**REQUEST FOR PRODUCTION NO. 2**: All documents concerning the retention of Perkins Coie LLP to conduct the investigation into Dr. Strauss's abuse.

**REQUEST FOR PRODUCTION NO. 3**: All documents, including communications, generated by any Senior Vice President, Vice President, Associate Vice President, Dean, Associate Dean, Assistant Dean, Department Chair, member of the Board of Trustees, or President of OSU, concerning Perkins Coie LLP's investigation.

**REQUEST FOR PRODUCTION NO. 7**: All documents or communications within Ohio State or between you and any external party concerning Dr. Strauss,

5

any investigation concerning Dr. Strauss, or any of the litigations concerning Dr. Strauss.

**REQUEST FOR PRODUCTION NO. 10**: All communications between members of the OSU Board of Trustees at any time concerning Dr. Strauss, any investigation concerning Dr. Strauss, or any of the litigations concerning Dr. Strauss.

**REQUEST FOR PRODUCTION NO. 11**: All communications between one or more members of the OSU Board of Trustees and anyone (other than OSU counsel) concerning Dr. Strauss, any investigation concerning Dr. Strauss, or any of the litigations concerning Dr. Strauss.

**REQUEST FOR PRODUCTION NO. 12**: All communications between OSU President Michael V. Drake and anyone (other than OSU counsel) concerning Dr. Strauss, any investigation concerning Dr. Strauss, or any of the litigations concerning Dr. Strauss.

**REQUEST FOR PRODUCTION NO. 13**: All communications between OSU President Kristina M. Johnson and anyone (other than OSU counsel) concerning Dr. Strauss, any investigation concerning Dr. Strauss, or any of the litigations concerning Dr. Strauss.

**REQUEST FOR PRODUCTION NO. 14**: All communications between OSU Acting President Peter Mohler and anyone (other than OSU counsel) concerning Dr. Strauss, any investigation concerning Dr. Strauss, or any of the litigations concerning Dr. Strauss.

**REQUEST FOR PRODUCTION NO. 15**: All communications between OSU President Walter E. Carter Jr. and anyone (other than OSU counsel) concerning Dr. Strauss, any investigation concerning Dr. Strauss, or any of the litigations concerning Dr. Strauss.

**REQUEST FOR PRODUCTION NO. 26**: All documents memorializing directive(s) or instructions given to OSU employees regarding their duties in collection of documents for Perkins Coie during its investigation of the abuse committed by Dr. Strauss.

**REQUEST FOR PRODUCTION NO. 27**: All correspondence with Perkins Coie before and during its investigation of the abuse committed by Dr. Strauss, including all correspondence and/or memoranda that accompanied documents which OSU provided to Perkins Coie in the course of the investigation.

**REQUEST FOR PRODUCTION NO. 28**: All documents that You originally collected for Perkins Coie, but ultimately did not provide to Perkins Coie during its investigation of the abuse committed by Dr. Strauss.

**REQUEST FOR PRODUCTION NO. 29**: All documents showing dates when documents and/or materials were sent to and received by Perkins Coie during its investigation of the abuse committed by Dr. Strauss.

## II.

Federal Rule of Civil Procedure 37 permits a party to file a motion for an order compelling discovery if another party fails to respond to discovery requests, provided that the motion to compel includes "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Consistent with this, Local Rule 37.1 requires the parties to "exhaust[ ] among themselves all extrajudicial means for resolving their differences" before filing an objection, motion, application, or request relating to discovery. S.D. Ohio Civ. R. 37.1. Local Rule 37.1 also allows parties to first seek an informal telephone conference with the Judge assigned to supervise discovery in the case, in lieu of immediately filing a discovery motion. *Id.* The Court is satisfied that this prerequisite has been met here.

"District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sol., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (citation omitted). "'It is well established that the scope of discovery is within the sound discretion of the trial court.'" *Id.* (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)). The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case...." Fed. R. Civ. P. 26(b)(1). While a plaintiff should "not be denied access to information necessary to

7

establish her claim," a plaintiff may not be "permitted to go fishing and a trial court retains

discretion to determine that a discovery request is too broad and oppressive."  *In re Ohio*

*Execution Protocol Litigation*, 845 F.3d 231, 236 (6th Cir. 2016) (citation omitted); *see also*

*Gallagher v. Anthony*, No. 16-cv-00284, 2016 WL 2997599, at *1 (N.D. Ohio May 24, 2016)

("[D]istrict courts have discretion to limit the scope of discovery where the information sought is

overly broad or would prove unduly burdensome to produce.").

      "The proponent of a motion to compel discovery bears the initial burden of proving that

the information sought is relevant." *Gruenbaum v. Werner Enter., Inc.*, 270 F.R.D. 298, 302

(S.D. Ohio 2010) (citation omitted). If the movant makes this showing, "then the burden shifts to

the non-movant to show that to produce the information would be unduly burdensome." *Prado v.*

*Thomas*, No. 3:16-CV-306, 2017 WL 5151377, at *1 (S.D. Ohio Oct. 19, 2017) (citing *O'Malley*

*v. NaphCare, Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015)); *see also* Fed. R. Civ. P. 26(b)(1)

advisory committee's note to 2015 amendment (stating that a party claiming undue burden or

expense "ordinarily has far better information—perhaps the only information—with respect to

that part of the determination" and that a "party claiming that a request is important to resolve

the issues should be able to explain the ways in which the underlying information bears on the

issues as that party understands them").

      The Federal Rules of Civil Procedure grant parties the right to "obtain discovery

regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ.

P. 26(b)(1); *see also Siriano v. Goodman Mfg. Co., L.P.*, No. 2:14-CV-1131, 2015 WL 8259548,

at *5 (S.D. Ohio Dec. 9, 2015).  "*Relevance* is construed very broadly for discovery purposes."

*Doe v. Ohio State Univ.*, No. 2:16-CV-171, 2018 WL 1373868, at *2 (S.D. Ohio Mar. 19, 2018)

(citation omitted). Despite being construed broadly, the concept of relevance is not unlimited. *Averett v. Honda of Am. Mfg., Inc.*, No. 2:07-cv-1167, 2009 WL 799638, at *2 (S.D. Ohio March 24, 2009). Indeed, "[t]o satisfy the discoverability standard, the information sought must have more than minimal relevance to the claims or defenses." *Doe*, 2018 WL 1373868 at *2 (citations omitted). Furthermore, when information is "negligibly relevant [or] minimally important in resolving the issues" this will not satisfy the standard. *Id.* (citation omitted).

### III.

Plaintiffs' arguments, discussed in more detail below, are straightforward. First, Plaintiffs assert that the documents and information sought through the Perkins Coie Requests are relevant. Further, they contend that OSU has no legitimate basis for withholding information or documents responsive to these Requests. More specifically, with respect to their second argument, Plaintiffs assert that the documents sought are solely within OSU's custody and control, providing responsive information would not be unduly burdensome for OSU, and neither the attorney-client privilege nor work-product doctrine applies.

Not surprisingly, OSU has a different view, detailing its own version of its discovery efforts to date. Somewhat more substantively, OSU contends that Plaintiffs' current Motion is a backdoor attempt to re-litigate Plaintiffs' prior motion *in limine* relating to the Perkins Coie Report, a motion the Court has denied without prejudice as premature. (ECF No. 45.) Further, OSU contends that the information sought is cumulative or duplicative of Plaintiffs' subpoena to Perkins Coie, the subject of *In re: Subpoena to Perkins Coie LLP*, Case No. 2:19-mc-38 (the "Subpoena Litigation"). Additionally, OSU argues that the information sought through the Perkins Coie Requests is irrelevant or impermissible "discovery-about-discovery," unduly

burdensome, and disproportional for a host of reasons. Beyond this, OSU asserts that the information sought is ***likely*** protected by the attorney-client privilege or work-product doctrine. (ECF No. 139 at 18) (emphasis added). Most boldly, however, OSU suggests that the Court should "remedy" what OSU characterizes as "the prior injustice" arising from the Court's decision in the Subpoena Litigation. (*Id*. at 20.)

Plaintiffs counter OSU's arguments in reply and note their willingness to confer with OSU to alleviate the claim of undue burden. The parties' arguments are addressed in turn below.

### A. Preliminary Matters

Initially, the Court quickly dispenses with certain issues raised in OSU's Response. First, OSU claims that the current Motion is Plaintiffs' attempt to re-litigate their earlier motion *in limine*. According to OSU, Plaintiffs are engaging in substantive motions practice on behalf of all Plaintiffs, in contravention of the Court's discovery stay and the Court's prohibition on filing such motions. (*See* ECF No. 139 at 9 citing Case Management Order No. 4, ECF No. 103.) This argument is meritless.[2] As Plaintiffs note, the focus of their Motion is the information necessary to establish the Report's admissibility, not the issue of admissibility. (ECF No. 141 at 8.) The Court agrees. Accordingly, the Motion to Compel will not be denied on this basis.

Next, OSU complains that the information sought is cumulative or duplicative of Plaintiffs' subpoena to Perkins Coie. According to OSU, RFP Nos. 3, 7, 27, and 29 in this case are similar to Subpoena Requests 1, 3, and 7 in the Subpoena Litigation.[3] Additionally, OSU

---

[2] The Court also notes that, later in its response, OSU proceeds to do exactly what it accuses Plaintiffs of wrongfully doing. (*See* ECF No. 139 at 14 incorporating its opposition to the motions to admit the Report into evidence.)

[3] The cited Subpoena Requests are restated here verbatim:

cites certain documents already produced by Perkins Coie that would be responsive to RFP No. 2, Interrogatory No. 18, or RFP Nos. 26 and 28. Finally, OSU asserts that the Court had ordered Plaintiffs to meet and confer with Perkins Coie regarding much of the same information they are now seeking from OSU here.

Plaintiffs explain that they seek information only in OSU's possession that has not been previously produced to Plaintiffs. According to Plaintiffs, they did not seek the requested information from Perkins Coie, it has not been produced by Perkins Coie, and it is not likely to be in Perkins Coie's possession.

The Court has reviewed the relevant Interrogatories and RFPs set forth above. Based on this review, OSU appears to overstate the extent of potential duplication. For example, to the extent that RFP No. 2 is properly read as requiring the duplicate production of Perkins Coie's engagement letter with Porter Wright, even assuming that to be true, that engagement letter is only one document. For purposes of resolving the current motion, the Court will not require OSU to produce that document in response to RFP No. 2. As for OSU's claim that the Certification of Counsel filed by Perkins Coie in the Subpoena Litigation would be responsive to Interrogatory No. 18, OSU is not precluded from directing Plaintiffs to that document in its discovery responses. Additionally, to the extent that language in the Perkins Coie Report itself

---

1. All documents provided by The Ohio State University in relation to or referenced in the Perkins Coie Report or your investigation into sexual abuse committed by Dr. Richard Strauss at the Ohio State University.

2. All communications in relation to or concerning the Perkins Coie Report.

7. All communications between OSU, on the one hand, including without limitation President Drake, OSU's Board of Trustees, any member of the Board of Trustees, OSU's counsel, and Perkins Coie LLP, on the other hand, concerning the Perkins Coie Report, including the Perkins Coie Report's findings and any draft reports.

11

may impact OSU's response to RFP Nos. 26 or 28, again nothing prevents OSU from communicating that impact in its discovery responses.  Finally, to the extent OSU asserts that RFP Nos. 3, 7, 27, and 29 are similar to Subpoena Request Nos. 1, 3, and 7 at issue in the Subpoena Litigation, OSU fails to acknowledge the pared down nature of the Subpoena Requests ultimately litigated in that miscellaneous action as discussed more fully below.

Finally, OSU claims that the current discovery requests amount to "discovery-on-discovery."  In OSU's view, the information Plaintiffs seek is "process-related discovery" with no relevance to the elements of each Plaintiff's Title IX claims.  The Court disagrees.  Plaintiffs are not seeking information on the various steps OSU took to locate, preserve, review and produce information in specific response to the discovery requests propounded by Plaintiffs in the current litigation.  Rather, as Plaintiffs explain, the discovery at issue seeks substantive information regarding how closely OSU worked with Perkins Coie during the Investigation.  Consequently, the Motion to Compel will not be denied on any of the above bases.

**B.  The Information Sought is Relevant**

Initially, on the matter of relevance, Plaintiffs contend that the Perkins Coie Investigation and Report "are core to this litigation and [their] claims."  (ECF No. 135 at 6.)  Plaintiffs affirm their position that the Perkins Coie findings substantiate OSU's deliberate indifference under Title IX.  As Plaintiffs state, "[t]he Report, based on Perkins Coie's multi-year and multi-million dollar investigation, makes detailed findings about the extent of Dr. Strauss's abuse and about Ohio State's knowledge of and inaction toward that abuse, on a department-specific basis."  (*Id.* at 7.)

For its part, OSU claims that "[d]iscovery about the Perkins Coie Report and its genesis, as well as documents and communications from the present day, do not answer whether Ohio State violated the Title IX rights of Discovery Plaintiffs *30-50 years ago* and is improper." (ECF No. 139 at 13) (emphasis in original). That is, in OSU's view, this requested discovery has no relevance to the specific elements each Plaintiff must prove to establish their Title IX claims. OSU, citing the Sixth Circuit's decision in *Synder-Hill v. Ohio State University*, 48 F.th 686 (2022) summarizes these elements as requiring each plaintiff to prove:

> (a)"Ohio State administrators 'with authority to take corrective action' knew of Strauss's conduct and failed to respond appropriately" at the time of each incident of alleged abuse for each plaintiff, and that Ohio State was deliberately indifferent; and, (b) for each plaintiff, that Ohio State, as an institution, "'(1) [] maintained a policy of deliberate indifference to reports of sexual misconduct, (2) which created a heightened risk of sexual harassment that was known or obvious (3) in a context subject to the school's control, and (4) as a result, the plaintiff suffered harassment that was 'so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school'" at the time of each incident of alleged abuse for each plaintiff.

(ECF No. 139 at 13 n. 7 citing *Snyder-Hill*, at 703-705.)

In reply, Plaintiffs reiterate that information surrounding the creation of the Report is relevant for two reasons. First, according to Plaintiffs, OSU has claimed the Report itself is inadmissible hearsay and has sought to distance itself from the Report's conclusions. Plaintiffs assert that the Court's admissibility inquiry will require an evaluation of the Report's reliability which will include consideration of information pertaining to "how closely Ohio State worked with Perkins Coie, Ohio State's oversight and decision-making into the document compilation, which documents were relied upon by Perkins Coie and what Ohio State's own communications say about the Report and investigation." (ECF No. 141 at 7.) Additionally, Plaintiffs contend

that OSU's own communications about the Report and Investigation constitute party admissions, illuminate OSU's previous admissions regarding its failure to protect students from Strauss, and inform the deposition testimony of current and former OSU employees. As to the relevancy of the requested discovery to the specific Discovery Plaintiffs, Plaintiffs argue that the Discovery Plaintiffs' cases "are based on largely or entirely the same factual circumstances as the larger group of Plaintiffs," even if specific damages may differ. (*Id.* at 8.)

The Court finds the requested discovery to be relevant. To be sure, as OSU contends, Rule 26 permits discovery only of information "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *Helena Agri-Enters., LLC v. Great Lakes Grain, LLC,* 988 F.3d 260, 273 (6th Cir. 2021). Nevertheless, although not unlimited, relevance for purposes of discovery is broadly construed by courts. *See, e.g., Halderman v. Herring Networks, Inc.,* 348 F.R.D. 305, 310 (E.D. Mich. 2025) (recognizing that relevance, for purposes of discovery, is an extremely broad concept which presents a relatively low threshold). That is, the scope of relevance is any matter that bears on or could reasonably lead to another matter that could bear on the claims or defenses of any party in a case. *Dodd v. Hendrickson USA, LLC*, 349 F.R.D. 286, 298 (W.D. Ky. 2025). Essentially, a request for discovery seeks relevant information if there is any possibility that the information sought may be relevant to a claim or defense of any party in the action. *Braun v. Norton Healthcare, Inc.,* No. 3:24-CV-00039-DJH-CHL, 2025 WL 3680326, at *2 (W.D. Ky. Dec. 18, 2025). Thus, courts may utilize their discretion to expand discovery based on the particular needs of the case. *See Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993) (noting that "the scope of discovery is

14

within the sound discretion of the trial court"). In short, discovery is generally allowed unless it has no possible bearing on such claims or defenses.

Here, the Court easily concludes that Plaintiffs' requested discovery satisfies the applicable relevance standard and rejects OSU's overly restrictive interpretation of that standard. It takes little imagination to understand Plaintiffs' stated importance of the Report's findings to their claims in these cases. Thus, information designed to assist Plaintiffs in pursuing the admissibility of the Report at the appropriate stage of this proceeding seems well within the bounds of relevance.

OSU's additional arguments opposing the finding of relevance also are unavailing. For example, OSU challenges Plaintiffs' agency and party-admissions arguments, incorporating by reference its opposition to Plaintiffs' earlier motion seeking admission. This argument has no place in the context of a discovery motion.

 Similarly, OSU's claim that circumstances surrounding the Report are not relevant because Plaintiffs are not asserting that any of the information OSU made available to Perkins Coie is unreliable sidesteps the issue here. As Plaintiffs note, the issue of the Report's reliability entails an inquiry "separate and apart" from whether the documents OSU provided to Perkins Coie "are themselves admissible and reliable." (ECF No. 141 at 7, n. 3.)

Finally, OSU's claim that Plaintiffs have failed to address how the requested discovery is relevant for any of the 20 Discovery Plaintiffs is equally unpersuasive. As Plaintiffs explain, the Discovery Plaintiffs' cases are based on largely or entirely the same factual circumstances as the larger group of Plaintiffs. As Plaintiffs explain, in an effort at efficiency, they are seeking the

same "corpus of information" applicable to all Discovery Plaintiffs through the single set of Perkins Coie Requests here. (ECF No. 141 at 12.)

For all these reasons, the Motion to Compel will not be denied on the basis that the requested discovery is not relevant.

### C. The Information Sought is not Unduly Burdensome and is Proportional

Beyond the issue of relevance, OSU also contends that the information sought through the Perkins Coie Requests is disproportional or unduly burdensome for several reasons: (1) OSU and Perkins Coie already have provided tens of thousands of pages of documents related to Perkins Coie; (2) Plaintiffs had ample time and opportunity to obtain Perkins-Coie related discovery from Perkins Coie itself during the heavily litigated subpoena action; (3) the information is irrelevant; (4) clear defenses bar Plaintiffs' claims; (5) Plaintiffs already received improper discovery disproportional to the needs of the case in the Subpoena Litigation and the error should not be compounded; and (6) determining privilege or work product protection will be unduly burdensome, both in time and expense. Plaintiffs dispute each of these claims of undue burden and disproportionality. The Court considers the issues raised by OSU in turn.

OSU's first argument focuses on the number of documents already produced by it or Perkins Coie.[4] That OSU and Perkins Coie already have produced thousands of pages of documents is no surprise. Perkins Coie investigated allegations spanning decades and interviewed witnesses across a sprawling public institution. OSU's second argument is likewise not compelling. As already noted, the scope of the Subpoena Litigation involved pared down

---

[4] OSU asserts that it has produced 38,952 pages of documents between the fact sheet and formal discovery processes. (Kunkle Decl., ECF No. 139-1 at ¶ 3.) OSU also cites the "many thousands" of pages published on its public website. *See* https://news.osu.edu/report-of-the-independent-investigation-into-sexual-abuse-committed -by-dr-richard-strauss/

16

requests and many of the documents being requested here, as Plaintiffs explain, are unlikely to

be in Perkins Coie's possession.  According to Plaintiffs, their current Requests encompass

OSU's internal communications about the Investigation and Report, documents related to public

statements OSU made in the wake of the Report's release, internal OSU communications about

Strauss more generally, communications between Ohio State employees or with external parties

who are not Perkins Coie, or documents collected by OSU but not provided to Perkins Coie

during the Investigation.  (ECF No. 141 at 10-11.)   As for OSU's third argument which

incorporates its relevance challenges, the above discussion rejects those challenges and that

reasoning applies here as well.

OSU's claim of undue burden also raises substantive merits-based issues.  Specifically,

OSU argues that some Plaintiffs' claims are barred by the statute of limitations and other

Plaintiffs' claims are barred by Eleventh Amendment immunity.  These arguments, too, are

easily rejected.  In short, the Court does not consider the merits of a claim when deciding a

motion to compel.  *Brahmamdam v. Trihealth Inc*., 2021 WL 2555066, *2 (S.D. Ohio Jun. 22,

2021).  As explained in that case,

> [A]rguments directed at the merits of a party's claims or the viability of affirmative
> defenses should be addressed by way of dispositive motion or at trial and not during
> a discovery dispute. *Stafford v. Jewelers Mut. Ins. Co.*, No. 3:12-cv-50, 2012 WL
> 6568325, at *3 (S.D. Ohio Dec. 17, 2012) (citations omitted). *See also South Pointe
> Wholesale, Inc. v. Vilardi*, No. 1:17-cv-52, 2018 WL 1721936, at *3 (W.D. Ky.
> Apr. 9, 2018) ("the scope of a motion to compel . . . is confined to an evaluation of
> whether the discovery sought is relevant to a claim or defense")."

*Brahmamdam,* at *2.  Moreover, the focus of the federal discovery rules, particularly

Fed.R.Civ.P. 26, is that parties "may obtain discovery regarding any nonprivileged matter that is

**relevant** to any party's claim or defense."  (Emphasis added).  And, the obvious

17

inappropriateness of the argument aside, it bears noting that OSU is not arguing the claims of all Plaintiffs are subject to dismissal on either of the identified bases, instead suggesting that approximately 157 Plaintiffs are subject to these defenses. (ECF No. 139 at 17.)  As discussed earlier, however, the relevance of the information sought extends to all Plaintiffs.  Thus, the dismissal of some Plaintiffs would not impact the need for proper responses to the Perkins Coie Requests.

This brings the Court to OSU's fifth assertion regarding the disproportionate nature of Plaintiffs' discovery requests.  This assertion only can be characterized as a completely inappropriate attack on the Court's Opinion and Order dated May 8, 2024, issued in the related Subpoena Litigation.  (Case No. 2:19-mc-38, ECF No. 89.)  OSU expounds upon this argument somewhat further in the final subsection of its responsive argument.  (ECF No. 139 at 21-22.)  In doing so, it daringly states that, by way of remedy, the Court should "prohibit[] further use of Perkins Coie's work product-protected interview notes and memoranda, bar[] the admission into evidence of the Perkins Coie Report and/or dismiss[] plaintiff's claims."  (*Id.* at 22.)  At minimum, this argument is stunningly improper in the context of the current Motion.  Indeed, it falls far below the level of professionalism typically exhibited by, and frankly, expected from, counsel for OSU when practicing before this Court.  To be clear, OSU was permitted to intervene in the Subpoena Litigation.  (Case No. 2:19-mc-38, ECF No. 39.)[5]  It could have

---

[5] The Court is fully aware that OSU was not represented by current litigation counsel in the Subpoena Litigation.  That is no justification for such a breach.

pursued a challenge to the Court's ruling in that matter.  It did not. [6]  Accordingly, the Court will

not make a finding of disproportionality on this basis.

OSU's final point on the matter of undue burden or proportionality relies on claims of

attorney-client privilege or the work-product doctrine.  Again, OSU relies on the information set

forth in the Kunkel Declaration regarding the number of identified documents and the time and

cost of a document review.  OSU then expounds upon these issues in a separate subsection of its

---

[6] In fact, at a critical moment, OSU did not present as an active participant in the Subpoena
Litigation.  This caused the Court to invite OSU's active participation after the subject motion to
quash was reinstated.   As stated by the Court in its Order dated January 3, 2024, inviting
additional briefing, the Court specifically stated:

> Also of concern to the Court is the information absent from the record. In moving
> to intervene, OSU stated that Perkins Coie cannot represent or speak on its behalf.
> (ECF No. 29 at 7.) Yet, despite its acknowledgment that it holds a "shared
> interest" in the "work product privilege" which it claims it has not waived, it has
> offered no briefing or evidentiary support on this issue. (*Id*. at 3.)

(Case No. 19-mc-38, ECF No. 75 at 10.)  That Order also stated the following:

> Further, Perkins Coie's claim of work product protection is undermined by certain
> representations made in various filings. For example, the Court notes with
> particularity a statement in OSU's response to Plaintiffs' motion requesting that the
> Court order Perkins Coie and OSU to participate in a conference scheduled in the
> underlying actions. That statement is set forth here verbatim as follows:
>
> > Ohio State separately engaged Porter Wright to oversee an
> > independent, external investigation, ***unrelated to any future
> > adversarial or litigation proceedings.*** The resulting investigation
> > and report were informative to Ohio State to bring closure to the
> > community regarding behavior by Dr. Richard Strauss from decades
> > ago. What information that was still available after 20-40 years
> > assisted Porter Wright and Perkins Coie in accomplishing that
> > objective.
>
> (ECF No. 67 at 1-2) (emphasis added). …

(*Id*.)

19

responsive argument. (ECF No. 139 at 18-21.) Thus, the Court will address this final point below.

### D. The Court will not Issue a Blanket Ruing on the Applicability of Attorney-Client Privilege or Work-Product Protection

Plaintiffs assert that the Court already addressed the issues of attorney-client privilege and work- product protection as they relate to Perkins Coie documents in the Subpoena Litigation and concluded that neither provides an automatic shield to disclosure. In Plaintiffs' interpretation, the Court "found that documents and communications generated in furtherance of the Perkins Coie investigation – whether by Ohio State employees or otherwise – were created for an investigation that "'would have been undertaken in the same manner regardless of litigation.'" (ECF No. 135 at 11 quoting Case No. 2:19-mc-38, ECF No. 89 at 9.) In making these arguments, Plaintiffs challenge any effort by OSU to distinguish between documents generated by Perkins Coie and documents generated by OSU during the Investigation and object to what they view as OSU's wholesale assertion of either protection. Nevertheless, recognizing that OSU may have appropriate assertions of privilege or work product protection regarding the Perkins Coie Requests, Plaintiffs request that the Court order production of a privilege log.

For its part, OSU asserts that communications within OSU and between OSU and Porter Wright and/or Perkins Coie are privileged where such communications involve the rendering or soliciting of legal advice. OSU also cites the well-established principle that documents prepared by an attorney in anticipation of litigation may constitute protected work product. OSU highlights that, in recognition of these precise protections, Plaintiffs themselves have refused to produce their own internal press-related communications, including those related to the Perkins Coie Investigation and Report. OSU also points out that, to the extent Plaintiffs are seeking a

20

privilege log, such a request contravenes the agreed upon provision the governing ESI Order that "the Parties shall have no obligation to log information generated on or after March 27, 2018." (ECF No. 139 at 19 citing Stipulated ESI Order, Case No. 2:23-cv-2993, ECF No. 126.) OSU also asserts that Plaintiffs' reliance on the Opinion and Order in the Subpoena Litigation is misplaced as that decision only addressed the applicability of privilege or work product protection to documents not at issue here.[7]

These issues do not require extensive discussion. Quickly, OSU's argument regarding Plaintiffs' withholding of certain press-related communications is not persuasive. In short, it simply fails to recognize the differing posture between OSU and Plaintiffs when it comes to internal communications relating to the Perkins Coie Report and the Strauss Investigation. As for the backdrop of the Opinion and Order in the Subpoena Litigation, it should go without saying that the Court's application of the attorney-client privilege and work product doctrine was based solely on the participants' arguments and evidentiary submissions in the context of that specific proceeding. To refresh, and for ease of reference, the only information at issue in the Subpoena Litigation was:

> four categories of information identified in Plaintiffs' response to Perkins Coie LLP's ("Perkins Coie") motion to quash Plaintiffs' subpoena, see ECF No. 35 (Pls.' Response) at 2: "(1) the identity of OSU witnesses described in Perkins Coie's

---

[7] OSU also characterizes the Opinion and Order in the Subpoena Litigation as relying on *FirstEnergy Corp. Sec. Litig.,* No. 2:20-CV-3785, 2023 WL 8290917, at *8 (S.D. Ohio Nov. 29, 2023)*,* and notes the Sixth Circuit's subsequent decision staying the order in *First Energy* pending the resolution of First Energy's petition for a writ of mandamus. (ECF No. 139 at 20 citing *In re First Energy Corp.*, No. 24-3654, 2025 WL 2335978 (6th Cir. Aug, 7, 2025)). As noted by Plaintiffs, the Sixth Circuit ultimately granted mandamus relief. *In re FirstEnergy Corp.,* 154 F.4th 431 (6th Cir. 2025). Notably, in doing so, OSU both mischaracterizes the Court's citations to *FirstEnergy* in the Subpoena Litigation and ignores the obvious factual distinctions between the circumstances of the Perkins Coie Investigation and those at issue in *FirstEnergy.*

> Report; (2) Perkins Coie's notes of communications with those witnesses; (3) its written communications with non-survivor OSU witnesses; and (4) OSU records which Perkins Coie uploaded into its electronic discovery database." Plaintiffs are not seeking the identity of, notes of communications with, or communications with the 177 survivor witnesses but are seeking the identity of, notes of communications with, and communications with current and former OSU employees, third[1]party/non-OSU witnesses, and other student witnesses—categories delineated in Perkins Coie's chart of "Number and Category of Witnesses Interviewed"—and included within Plaintiffs' underlying requests.

(Case No. 2:19-mc-38, ECF No. 89 at 2.) Here, as Plaintiffs explain, they seek information and documents distinct from this information. Importantly, however, for purposes of resolving the current Motion, the parties have not presented the Court with a similarly meaningful record on which it could reach any conclusion regarding the applicability of either attorney-client privilege or work product protection. At best, OSU has made a sweeping request that the Court issue a blanket ruling either upholding the wholesale applicability of privilege and work product protection to the Perkins Coie Requests at issue here while Plaintiffs urge the rejection of such an approach. At bottom, without the support of a useful record, the Court will not deny the current Motion to Compel based on a sweeping application of attorney-client privilege or work-product protection.

Nevertheless, the Court is mindful of the issues raised by OSU regarding the number of responsive documents identified, potential privilege and work product protection issues, and the asserted time and expense of an appropriate review. The Court also recognizes Plaintiffs' offer to meet and confer with OSU to narrow the operative search terms and custodians, recognizing that it is in their interest to do so. (ECF No. 141 at 13.) Accordingly, rather than order any production of documents at this time, the Court will order the parties to meet and confer **WITHIN TEN DAYS** of the date of this Opinion and Order to work toward a prompt resolution.

The parties will then be required to report back to the Court **WITHIN THIIRTY DAYS** of the date of this Opinion and Order to advise the Court of their progress.

In ordering this meet and confer, the Court also recognizes that OSU is correct in its position regarding the requirement of a privilege log.  In the Stipulated Order Regarding Production of Electronically Stored Information and Scanned Hard-Copy Documents dated August 21, 2025, and entered in Case Nos. 2:23-cv-2993, 2:23-cv-2994 and 2:23-cv-3051, the signing parties specifically agreed to the following provision:

**IV. PRIVILEGE ISSUES**

**A.  Privilege Log Protocol.**

For any responsive Document withheld in part or in its entirety, the Producing Party will produce privilege logs in Excel format that permit electronic sorting and searching, ***except that the Parties shall have no obligation to log information generated on or after March 27, 2018***. A Producing Party will produce a separate privilege log for each production within thirty (30) days of the production of documents for which a privilege is asserted. Privilege logs for each custodian must be complete and produced ten (10) days before the custodian's deposition.

(Case No. 23-cv-2993, ECF No. 126) (emphasis added).  During the meet-and-confer process, the Court encourages the parties to refrain from allowing this agreement to prevent an otherwise workable resolution.[8]

**IV.**

For the reasons set forth above, the Motion to Compel (ECF No. 135) is **GRANTED**.  In lieu of ordering immediate responses or production, the Court **DIRECTS** the parties to meet and confer **WITHIN TEN DAYS OF THE DATE OF THIS OPINION AND ORDER** and to

---

[8] The Court notes Plaintiffs' suggestion that it would be within the Court's power to reject this limitation on the need for a privilege log.  (ECF No. 135 at 12, n. 8.)  The Court declines to make such a ruling at this time.

report back to the Court **WITHIN THIRTY DAYS OF THE DATE OF THIS OPINION AND ORDER** to advise the Court of their progress.

       **IT IS SO ORDERED**.

Date: January 28, 2026

                         s/ *Michael H. Watson*
                         MICHAEL H. WATSON, JUDGE
                         UNITED STATES DISTRICT COURT

                         */s/ Elizabeth A. Preston Deavers*
                         ELIZABETH A. PRESTON DEAVERS
                         UNITED STATES MAGISTRATE JUDGE